# IN THE SUPREME COURT OF IOWA

No. 11–1133

Filed March 21, 2014

**STATE OF IOWA,**

    Appellee,

vs.

**AKI MALIK ROSS,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Bobbi M. Alpers, Judge.

A defendant seeks further review of a court of appeals decision affirming his convictions for voluntary manslaughter and five counts of intimidation with a dangerous weapon with intent. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, SENTENCES VACATED, AND CASE REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

A jury convicted the defendant of voluntary manslaughter under Iowa Code section 707.4 (2011) and five counts of intimidation with a dangerous weapon with intent under section 708.6. He appealed his convictions. We transferred the case to the court of appeals. The court of appeals affirmed his convictions. On further review, we find trial counsel was ineffective for failing to move for a judgment of acquittal after the verdict on the intimidation counts because substantial evidence did not support the verdicts that the defendant had committed five separate and distinct acts of intimidation with a dangerous weapon with intent. However, we do find substantial evidence supports two separate and distinct crimes of intimidation with a dangerous weapon with intent. We agree with the court of appeals decision that the record is inadequate to decide the defendant's claim that his trial counsel was ineffective for failing to request he should have been able to read a deposition of an unavailable witness to the jury. We also agree with the court of appeals the district court did not abuse its discretion in failing to admit certain photographs into evidence. Therefore, we affirm in part and vacate in part the court of appeals decision. We also vacate the defendant's convictions on three counts of intimidation with a dangerous weapon with intent, vacate his sentence on the remaining counts of intimidation and the one count of voluntary manslaughter, and remand the case to the district court for resentencing on the two convictions for intimidation with a dangerous weapon with intent and his conviction for voluntary manslaughter.

## I. Background Facts and Proceedings.

In reviewing the evidence most favorably to uphold the verdict, we find the following facts. On March 30, 2011, Joevante Howard was

walking in a neighborhood in Davenport with relatives and friends, including Joevante's uncle, Milton Howard. The group was traveling to the birthday party of Joevante's sister. The group stopped at a local gas station to pick up beer and other items before continuing to walk east on 12th Street toward the birthday party. The group passed a house at the corner of 12th Street and Pershing Avenue. The defendant Aki Ross was sitting on the porch of this house with four or five other individuals.

When Ross saw the group pass the house, he went upstairs to avoid an altercation with the group. Ross recognized Milton in the group, yelled out the window to the group and to Milton, and told Milton he did not want any problems. Ross and Milton continued to talk to one another. Ross eventually went downstairs to the porch because he knew Milton and the group would not be leaving soon.

Milton and Ross argued. At one point, several people on the porch physically restrained Ross, and one witness saw Ross with a gun in his waistband. The argument lasted no more than fifteen minutes. Milton told Ross to put down the gun and come into the street and fight. When Ross refused to fight, Milton ran to catch up with his group, who had continued walking down Pershing Avenue. Ross returned to the house.

A short time later Ross ran into the street with the gun and began firing. The members of the group scattered. When Ross began shooting, Milton ran behind a red van on the east side of Pershing Avenue. Joevante was on the opposite side of the street. One witness testified Ross fired three or four shots and then stopped shooting. The witness testified Joevante crossed the street as Ross began firing his gun again. Milton saw a bullet hit Joevante in this second round of shots. Joevante fell. Another person, Milton's cousin Brett Roelandt, had a gun that day and fired one shot at Ross.

Joevante received two gunshot wounds, one in the back of his head and the other in his right thigh. His cause of death was the gunshot wound to the head. The bullet recovered from Joevante's head wound was a .45 caliber. The police recovered eight .45 caliber auto-cartridge cases from the scene. All eight cartridge cases came from the same firearm. The criminalist at trial could not say whether the bullets came from the same firearm. Ross stated at trial that on the day of the shooting he possessed a .45 caliber semi-automatic gun. Roelandt's gun shot .40 caliber ammunition. The police found one .40 caliber cartridge at the scene.

The State originally charged Ross with one count of murder in the first degree under Iowa Code section 707.2 and one count of intimidation with a dangerous weapon with intent under Iowa Code section 708.6. Ross filed a notice of the defenses of self-defense and defense of others. The State amended its charges and charged Ross with one count of murder in the first degree and seven counts of intimidation with a dangerous weapon with intent. Ross moved to dismiss six of the counts of intimidation with a dangerous weapon with intent. The grounds he alleged in the motion to dismiss were the trial information failed to allege separate independent acts of intimidation with a dangerous weapon with intent and the State lacked the factual basis to support seven counts. The district court overruled the motion, stating the State should have the opportunity to prove seven counts.

At the close of the State's case, Ross moved for a directed verdict on the ground the State failed to provide sufficient evidence to support the charges. The court overruled this motion on the ground the State provided sufficient evidence to support the first-degree murder charge and the intimidation-with-a-dangerous-weapon-with-intent charges.

Ross renewed his motion for directed verdict at the end of the case. The court overruled this motion for the same reasons it overruled the prior motion. Trial counsel did not make a specific objection concerning the seven separate counts of intimidation with a dangerous weapon with intent.

The court instructed on all seven counts of intimidation with a dangerous weapon with intent. Trial counsel did not object to the jury instruction on the ground the instruction did not name a particular victim.

The jury returned a verdict finding Ross guilty of the lesser-included crime of voluntary manslaughter and five counts of intimidation with a dangerous weapon with intent. The jury found him not guilty of two counts of intimidation with a dangerous weapon with intent. Trial counsel did not move for judgment of acquittal on the ground the court should have combined the seven counts of intimidation with a dangerous weapon with intent into one count. The district court sentenced Ross to a prison term not to exceed ten years on each count. All sentences were to run consecutively. Ross appeals.

On appeal, Ross claims his trial counsel was ineffective in (1) failing to request a proper jury instruction on the intimidation counts, (2) failing to properly move for a judgment of acquittal at the close of the evidence on the intimidation counts on the basis there was insufficient evidence to submit all seven charges, (3) failing to move for a judgment of acquittal after the verdict on the intimidation counts because substantial evidence did not support five separate convictions, and (4) failing to properly request that a deposition of an unavailable witness be read to the jury. Ross also raises a fifth issue claiming the district court abused

its discretion by not allowing him to introduce certain photographs into evidence.

We transferred this case to our court of appeals. The court of appeals preserved all the ineffective-assistance-of-counsel claims for possible postconviction relief proceedings because it determined the record was not adequate to decide these issues. The court of appeals held the district court did not abuse its discretion in excluding the photographs.

## II. Issues.

When we accept a case on further review, we have the discretion to review all or some of the issues the parties raised on appeal. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We will resolve ineffective-assistance-of-counsel claims on direct appeal only when the record is adequate. *Id.* In exercising our discretion, we choose only to review the first three ineffective-assistance-of-counsel claims raised on appeal involving trial counsel's failure to make proper objections to the jury instruction and trial counsel's failure to make two motions for judgment of acquittal because the record is adequate to review these claims. The court of appeals decision will be our final decision on the ineffective-assistance-of-counsel claim involving trial counsel's failure to properly request that a deposition of an unavailable witness be read to the jury because the record is inadequate to reach this issue on direct appeal. Finally, the court of appeals decision on the admission of the photographs will also be this court's final decision. *See id.* (recognizing the court of appeals decision is our final decision on issues we choose not to review).

### III. Standard of Review.

Ineffective-assistance-of-counsel claims are grounded in the Sixth Amendment. *Id.* We review ineffective-assistance-of-counsel claims de novo. *Id.* To the extent Ross's claims raise issues of statutory interpretation, our review is for correction of errors at law. *State v. Allen*, 708 N.W.2d 361, 365 (Iowa 2006).

### IV. Ineffective-Assistance-of-Counsel Claims.

**A. Generally.** We analyze ineffective-assistance-of-counsel claims under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). *Clay*, 824 N.W.2d at 495. The first prong requires the defendant to show a deficiency in counsel's performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Under this prong, the presumption is the attorney competently performed his or her duties. *Clay*, 824 N.W.2d at 495. The defendant "rebuts this presumption by showing a preponderance of the evidence demonstrates counsel failed to perform an essential duty." *Id.* Counsel breaches an essential duty when counsel makes such serious errors that counsel is not functioning as the advocate the Sixth Amendment guarantees. *Id.* "[W]e require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently." *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). Trial counsel has no duty to raise an issue that lacks merit. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

The second prong requires the defendant to show "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at

693.  The defendant must prove by a reasonable probability the result of the proceeding would have differed but for counsel's errors.  *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

**B.  Whether Trial Counsel Was Ineffective in Failing to Request Proper Jury Instructions on the Intimidation Counts.**  "[F]ailure to recognize an erroneous [jury] instruction and preserve error breaches an essential duty."  *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). The marshaling instruction the court used on the intimidation-with-a-dangerous-weapon-with-intent counts was as follows:

> Under Counts 2, 3, 4, 5, 6, 7 and 8, the State must prove all of the following elements of Intimidation With a Dangerous Weapon with Intent for each count:
>
> 1. On or about the 30th day of March, 2010, the defendant discharged a handgun within an assembly of people.
>
> 2. The handgun was a dangerous weapon.
>
> 3. The *victim* actually experienced fear of serious injury and his or her fear was reasonable under the existing circumstances.
>
> 4. The defendant shot the handgun with the specific intent to injure or cause fear or anger in a person.
>
> 5. That said act was done without justification.

(Emphasis added.)  Ross argues trial counsel should have objected to the instruction on the ground that instead of using the word "victim" in the jury instruction, the proper interpretation of Iowa Code section 708.6 is to indicate the name of each particular victim.  Ross argues the unit of prosecution in this statute is for each victim, and therefore the State must name seven victims.  If this argument is meritless, trial counsel was not ineffective.

To determine the validity of Ross's claim, we must first decide what act the general assembly criminalized under Iowa Code section 708.6. Iowa Code section 708.6 provides:

> A person commits a class "C" felony when the person, with the intent to injure or provoke fear or anger in another, shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.

A plain reading of the statute indicates the general assembly intended to criminalize four alternative acts that would constitute intimidation with a dangerous weapon with intent.

The first act is when a person (1) has the specific intent to injure or provoke fear or anger in another; (2) shoots, throws, launches, or discharges a dangerous weapon; (3) at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat; (4) that is occupied by another person; and (5) places the occupants in reasonable apprehension of serious injury.

The second act is when a person (1) has the specific intent to injure or provoke fear or anger in another; (2) shoots, throws, launches, or discharges a dangerous weapon; (3) within an assembly of people; and (4) the people are placed in reasonable apprehension of serious injury.

The third and fourth acts differ in only requiring a person with the requisite intent threatens to shoot, throw, launch, or discharge a dangerous weapon in an occupied structure or vehicle or within an assembly of people. In this case, we are only concerned with the second method of violating Iowa Code section 708.6.

Ross contends element three of the marshaling instruction given required the court to name a particular victim for each count of intimidation with a dangerous weapon with intent because the act criminalized is tied to an individual victim. We disagree.

We have previously discussed the nature of a violation of section 708.6 when a person fires a dangerous weapon into an assembly of people. *See State v. Smith,* 573 N.W.2d 14, 19 (Iowa 1997). There, the jury convicted Smith for the crime of terrorism[1] under section 708.6 for firing a weapon into a group of people with the intent to injure or provoke fear or anger in those people. *Id.* The jury also convicted Smith for the crime of assault with intent to inflict serious injury under section 708.2(1) for firing his gun at a named victim with intent to seriously injure that victim. *Id.* In determining these two convictions did not violate the Double Jeopardy Clause of the United States Constitution, we held a violation of section 708.6 is a separate and distinct act from a violation of section 708.2(1). *Id.* Section 708.6 does not criminalize an act on a particular person, but rather an assault calculated to imperil the safety of the people in the assembly. On the other hand, section 708.2(1) criminalizes an act to injure a particular victim.

To convict Ross of intimidation with a dangerous weapon with intent, the State must prove Ross had the specific intent to injure or provoke fear or anger in another by shooting within an assembly of people. *See* Iowa Code § 708.6 (2011). The State must also prove Ross placed the people in the assembly in reasonable apprehension of serious

---

[1]In 2002, the general assembly amended the Iowa Code to rename the then crime of terrorism to the crime of intimidation with a dangerous weapon with intent and enacted a wholly new offense of terrorism. *See* 2002 Iowa Acts ch. 1075 (codified in scattered sections of the Iowa Code including § 707.2, § 708.6, and ch. 708A (2003)).

injury. *See id.* Thus, there is no single victim involved in committing intimidation with a dangerous weapon with intent under the facts of this case. Rather, the victim is the assembly of people as a whole.

Reading the instruction in context, the group of people in the assembly is the victim of Ross's act of shooting within the assembly. Although it would have been better for the court to use "the people" rather than "the victim" in element three, the instruction properly states the law.

We concede the instruction as given was not perfect, but it did not constitute error. We find the instruction as given sufficiently sets forth the elements of the second method to commit the crime of intimidation with a dangerous weapon with intent. The instruction clearly requires the jury to find (1) Ross had the specific intent to injure or provoke fear or anger in another; (2) through the act of shooting, throwing, launching, or discharging a dangerous weapon; (3) within an assembly of people; and (4) that the people were placed in reasonable apprehension of serious injury.

Thus, the act of committing a violation of Iowa Code section 708.6 does not depend on the number of individual victims when the State's theory of the case involves shooting into an assembly of people. Had trial counsel objected to the instruction on the ground the criminal act of intimidation with a dangerous weapon with intent requires an individual victim for each count under the facts of this case, the objection would have been without merit. Therefore, trial counsel did not breach an essential duty for failing to object to the instruction on this ground.

**C. Whether Trial Counsel Was Ineffective for Failing to Properly Move for a Judgment of Acquittal at the Close of the Evidence on the Intimidation-with-a-Dangerous-Weapon-with-Intent**

**Counts on the Basis There Was Insufficient Evidence to Submit All Seven Counts.** Ross argues trial counsel failed to make the specific objection there was insufficient evidence to prove each victim was fearful regarding the intimidation-with-a-dangerous-weapon-with-intent counts when trial counsel made a motion for judgment of acquittal. Trial counsel is required to make a specific objection in his or her motion for judgment of acquittal in order to preserve error. *State v. Schories*, 827 N.W.2d 659, 664 (Iowa 2013). We agree with Ross that trial counsel failed to make the specific objection that insufficient evidence existed to prove each victim was fearful regarding the intimidation-with-a-dangerous-weapon-with-intent counts when trial counsel made a motion for judgment of acquittal.

Under the way the State charged this case, we do not measure each individual count of intimidation with a dangerous weapon with intent by looking for an individual victim for each count. *See Smith*, 573 N.W.2d at 19 (identifying the element of the crime as firing into a group of people). The proper question for us to decide is whether substantial evidence, including any inferences arising from the evidence, supports the jury verdict. *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). This requires us to determine whether Ross's actions placed the victim, in this case the people in the assembly, in reasonable apprehension of serious injury when Ross discharged his firearm.

The phrase "reasonable apprehension of serious injury" requires consideration of both the state of mind of the actor and the victim. *State v. White*, 319 N.W.2d 213, 215 (Iowa 1982). Ross only challenges sufficiency of evidence for the victim's—the assembly of people—state of mind. The jury must determine the actual effect of the shooting on members of the assembly and if a reasonable person in the position of

persons in the assembly would have been frightened. *See id.* at 215–16 (stating the lack of evidence from which the jury could find the alleged victim experienced apprehension of serious injury was fatal to the claim).

However, this does not necessarily mean that the State must prove that all persons present at the scene experienced fear. The statute requires an action within an "assembly of people" and that the "people [were placed] in reasonable apprehension of serious injury." Iowa Code § 708.6. We have interpreted "within an assembly of people" to mean "into or through two or more persons at the same place." *State v. Bush,* 518 N.W.2d 778, 780 (Iowa 1994). Therefore, to meet the statutory requirement, at a minimum the State must prove that when Ross discharged his firearm he placed two persons in the assembly in reasonable fear. Moreover, Ross may place the same two people in reasonable fear for each unit of prosecution. Thus, the question is whether there was sufficient evidence to support a finding that Ross's action of shooting objectively and subjectively placed two people in the assembly in reasonable apprehension of serious injury.

In making this determination, we view the evidence in the light most favorable to the State. *Crone,* 545 N.W.2d at 270. Two people testified they experienced fear during the shootings. Milton, who was on the street at the time, stated he was scared during the shootings because he did not want to be shot. Another member of Milton's group who was hiding behind a truck testified he was scared when the shots were traveling his direction. The statute does not require the members of the assembly specifically testify that they were scared. *See White,* 319 N.W.2d at 216 (stating there are cases where the finder of fact could infer apprehension from the facts and circumstances of the victim's actions). However, here we have testimony from two people that they subjectively

experienced fear. Accordingly, we find the evidence is sufficient to support the subjective part of the apprehension element. We also find a reasonable person would have experienced fear when someone was shooting a gun in his or her direction.

We reiterate evidence of the same two people experiencing a reasonable apprehension of fear may support multiple counts of intimidation with a dangerous weapon with intent under the facts of this case. Therefore, if trial counsel had made a motion for acquittal arguing the State failed to prove an individual victim experienced apprehension for each count submitted, the motion would have been meritless. Thus, we find trial counsel did not breach an essential duty and was not ineffective.

**D.  Whether Trial Counsel Was Ineffective for Failing to Move for a Judgment of Acquittal After the Verdicts on the Intimidation-with-a-Dangerous-Weapon-with-Intent Counts Because Substantial Evidence Did Not Support Five Separate Convictions.** Ross frames this issue in his brief as an issue of merger. Our merger doctrine is limited to double jeopardy claims involving lesser-included offenses. *See State v. Anderson*, 565 N.W.2d 340, 343 (Iowa 1997) ("[Iowa Code section 701.9] and [Iowa Rule of Criminal Procedure 2.6(2)] express the merger doctrine in Iowa."). Ross's argument does not involve lesser-included offenses, but rather the same statute charged multiple times. Accordingly, we recognize Ross as using the word "merger" in his brief in its general definition of "[t]he act or an instance of combining or uniting" to ask us to combine his convictions. *See Black's Law Dictionary* 1078 (9th ed. 2009).

Ross argues trial counsel failed to make the specific objection that Ross only committed one act of intimidation with a dangerous weapon

with intent because the shots he fired that day constituted only one crime of intimidation with a dangerous weapon with intent. Ross's trial counsel made this argument in a pretrial motion to dismiss. The district court overruled the motion, stating it was going to give the State the opportunity to prove seven separate counts of intimidation with a dangerous weapon with intent. The district court also stated the evidence might not support seven counts of intimidation with a dangerous weapon with intent and it was possible the district court would not ultimately submit all seven counts to the jury. The district court submitted all seven counts to the jury. Trial counsel failed to raise this issue in his motion for judgment of acquittal.

There are no common law crimes in this state. *State v. Campbell*, 217 Iowa 848, 853, 251 N.W. 717, 719 (1933). The general assembly defines all crimes. *State v. Wolford Corp.*, 689 N.W.2d 471, 473 (Iowa 2004). Thus, the general assembly decides which acts to criminalize. Under the second alternative method included in section 708.6, the general assembly has defined the crime of intimidation with a dangerous weapon with intent as the act of committing an assault on a group of people, rather than an assault on an individual. *See Smith*, 573 N.W.2d at 19.

To determine whether the evidence was substantial to support the verdict requires us to determine how many acts of assault took place on the assembly of people when Ross discharged his gun. We have recently discussed this issue in the context of an assault against a single victim. *See State v. Velez*, 829 N.W.2d 572, 577–85 (Iowa 2013). The first step in the analysis is to determine the general assembly's intent for the unit of prosecution. *Id.* at 579. Determining the unit of prosecution is another way of saying, what act did the general assembly criminalize?

The statute states the act of intimidation with a dangerous weapon with intent is committed when the defendant has the specific intent to injure or provoke fear or anger in another; he does so by shooting, throwing, launching, or discharging a dangerous weapon within an assembly of people; and the result is the people are placed in reasonable apprehension of serious injury. Iowa Code § 708.6. Thus we must decide whether substantial evidence supports the jury's verdict that Ross's actions support five counts of intimidation with a dangerous weapon with intent. If substantial evidence exists, we are required to affirm the convictions. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

In determining whether substantial evidence supports a verdict, we view the evidence in the light most favorable to the State. *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013). We consider the evidence substantial if it can convince a rational jury the defendant is guilty beyond a reasonable doubt. *Id.*

In *Velez*, we discussed three separate tests to determine if substantial evidence exists to convict a defendant of multiple assaults arising from a single altercation between the defendant and his victim. *Velez*, 829 N.W.2d at 581–83. We delineated the tests as the separate-acts test, the break-in-the-action test, and the completed-acts test. *Id.* Although we discussed each test separately, the goal in applying each test was to determine whether the record established a factual basis to convict the defendant of separate and distinct acts of assault or only a single continuous act of assault.

In *Velez*, we determined the guilty plea record supported a factual basis for the court to conclude Velez committed two separate and distinct acts of assault. *See id.* We reached this conclusion because the record revealed the victim suffered two serious injuries during an altercation

where the defendant struck the victim numerous times, then stopped striking the victim to pat him down for money, and after finding none, resumed hitting the victim. *Id.* at 583–84. We found the first set of blows Velez delivered before the pat-down was one continuous act and constituted the first assault. *Id.* We then found the blows Velez delivered after the pat-down were a separate and distinct continuous act supporting the second assault. *Id.* In other words, our determination did not depend on the number of blows, but the number of separate and distinct acts shown by the record. Although Velez delivered multiple blows, we determined that the evidence was substantial to allow the finder of fact to determine two separate and distinct acts of assault occurred by applying the completed-acts test or the break-in-the-action test. *Id.* at 584.

Other courts confronting whether multiple shots constitute a single crime or multiple crimes examine the factual record to determine its answer. Some courts have determined the factual record supports multiple offenses. The Supreme Court of Kentucky held six shots constituted six separate violations of wanton endangerment. *See Hennemeyer v. Commonwealth*, 580 S.W.2d 211, 215 (Ky. 1979).[2] There, the relevant facts showed while the troopers were in pursuit of the defendant, the defendant

> leaned out of the right front window and over a period of approximately fifteen minutes fired five shots from a 30.30 rifle at and into the police car. After each shot was fired, the [defendant] would pull himself back into the car. . . . The

---

[2]The Commonwealth charged the defendant with ten counts of wanton endangerment. The first four counts were based on the defendant firing four shots over a short period of time at state troopers the day before the six additional shots were fired. *Hennemeyer*, 580 S.W.2d at 211–13. The trial court considered these four shots a course of conduct constituting one crime of wanton endangerment. *Id.* at 214.

chase . . . ended when the car stopped [and the defendant] and his confederate fled on foot. While fleeing on foot, the [defendant] stopped long enough to fire one shot at pursuing police . . . .

*Id.* at 213.

The Missouri Court of Appeals has also held a defendant committed two crimes of unlawful use of a weapon when he shot a shotgun twice into a house. *State v. Morrow*, 888 S.W.2d 387, 392–93 (Mo. Ct. App. 1994). In making its decision, the court relied on the facts recited in the state's brief, which were that

> [t]wo shotgun blasts were found in different locations on the outside of Rogers' home, through the window and side of the house. Defendant committed two separate and distinct offenses given that it took the acts of "pumping another shell into the chamber" and then pointing and firing the shotgun a second time into Rogers' house.

*Id.* at 390.

The North Carolina Supreme Court concluded three shots fired at a vehicle constituted three crimes of discharging a firearm into an occupied property. *State v. Rambert*, 459 S.E.2d 510, 513 (N.C. 1995). The facts in *Rambert* reveal:

> Defendant, with whom Dillahunt previously had a number of verbal altercations, was riding in an automobile that pulled into a parking space next to the space where Dillahunt's automobile was parked. Defendant and Dillahunt exchanged a few words until defendant produced a gun. After seeing the gun, Dillahunt ducked down in his automobile, and a bullet entered the front windshield of the vehicle. Dillahunt then drove forward, and another bullet struck the passenger door of his vehicle. At this time, Dillahunt and defendant were approximately ten yards apart. Defendant pursued Dillahunt and fired a third shot, which lodged in the rear bumper of Dillahunt's automobile.

*Id.* at 512–13. The court noted each shot was distinct in time and each bullet hit a different location on the vehicle. *Id.* at 513. In all these

cases, the court found a break in time between the shots justified the fact finder to find the defendant had committed separate and distinct acts rather than one continuous act.

On the other hand, other courts have determined shots fired in succession constitute a single crime. The Florida Court of Appeals combined a defendant's conviction for attempted premeditated first-degree murder and attempted felony murder because the convictions were not predicated on two distinct acts. *Williams v. State*, 90 So. 3d 931, 935 (Fla. Dist. Ct. App. 2012). The facts in *Williams* revealed:

> Appellant retrieved a semi-automatic pistol, returned outside, and approached the victim. The victim ran away and Appellant pursued, firing three shots at the victim while standing in the middle of the street. Appellant continued to pursue the victim, firing four or five more shots. One bullet struck the victim in the back, going through his right shoulder, and came to rest on his spine. A police officer, stationed at the front of the apartment complex, heard three or four gunshots, a few seconds' pause, and four or five more gunshots.

*Id.* at 932–33. In reaching this decision, the Florida court reviewed the facts and determined there was no intervening act between gunshots, the location of the shooting was the same, and the evidence did not show the defendant formed a new intent with each shot. *Id.* at 933. In other words, the defendant's conduct was a continuous course of conduct with no evidence supporting the defendant committed separate and distinct acts.

The New Mexico Court of Appeals reached a similar conclusion. *State v. Handa*, 897 P.2d 225, 232 (N.M. Ct. App. 1995). There the facts revealed when a police officer informed the defendant he was under arrest, the defendant pointed a gun at the officer and fired three shots. *Id.* at 227. The defendant pled guilty to two counts of assault with intent

to commit a violent felony on a peace officer. *Id.* The court examined whether a factual basis existed for the two charges. It found no evidence of more than a single continuous assault; thus, the separate shots were not separate and distinct acts but one continuous act. *Id.* at 230–31.

The general assembly has the absolute right to determine the unit of prosecution for a crime. General assemblies in other states have more specifically defined units of prosecution in their statutes. In Missouri, the legislature passed a law providing a unit of prosecution by defining a continuing course of conduct. *State v. French*, 79 S.W.3d 896, 899 (Mo. 2002). Missouri's statute provides:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
>
> . . . .
>
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Mo. Ann. Stat. § 556.041 (West, Westlaw current through Feb. 19, 2014).

In Oregon, the legislature passed a law identifying the unit of prosecution as the number of victims. Oregon's statute states, "When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." Or. Rev. Stat. Ann. § 161.067 (West, Westlaw current through 2013 sessions).

The Iowa general assembly could have said that each shot in and of itself is the unit of prosecution for Iowa Code section 708.6. The general assembly chose not to define the unit of prosecution in that way. In other words, the general assembly chose to allow the fact finder to

determine how many separate and distinct acts of intimidation with a dangerous weapon with intent a defendant committed based upon the evidence presented.

When the general assembly defines a unit of prosecution based upon an act or omission of the defendant,[3] our decision in *Velez* and cases in other jurisdictions have considered certain factors to aid the fact finder in determining if the defendant's assaultive conduct is one continuous act or a series of separate and distinct acts.[4] These factors are (1) the time interval occurring between the successive actions of the defendant, (2) the place of the actions, (3) the identity of the victims, (4) the existence of an intervening act, (5) the similarity of defendant's actions, and (6) defendant's intent at the time of his actions. *Williams*, 90 So. 3d at 933; *Velez*, 829 N.W.2d at 581–84; *Rambert*, 459 S.E.2d at 513; *Handa*, 897 P.2d at 230. We also use these factors to determine if substantial evidence supports the fact finder's verdict.

In applying these factors, we first note there are discrepancies among the witnesses in the number and spacing of the shots fired by Ross. One witness testified he heard five or six shots, then amended his answer to three to five shots, and stated there was not a pause between

---

[3]Our general assembly has defined the unit of prosecution for certain crimes not based upon an act or omission of the defendant. For example, the number of victims defines the unit of prosecution for murder. Iowa Code § 707.1. The number of checks, share drafts, drafts or written orders defines the unit of prosecution for theft by fraudulent document. *Id.* § 714.1(6).

[4]Other courts have also identified factors to aid in determining whether a defendant's conduct is a single act or multiple acts. *See People v. Rodarte*, 547 N.E.2d 1256, 1261–62 (Ill. App. Ct. 1989) (identifying six factors to consider when deciding whether a defendant's conduct is a single act or separate acts); *State v. Fillman*, 223 P.3d 827, 834 (Kan. Ct. App. 2010) (considering four factors to decide a defendant committed two separate acts); *Harrel v. State*, 277 N.W.2d 462, 472–73 (Wis. Ct. App. 1979) (determining seven factors elicited from other cases would aid in discerning whether defendant committed a single offense or multiple offenses).

the shots. Another witness testified he heard two shots, a brief pause, and then five to six additional shots. Another witness heard five or six shots in two separate groupings and noted there was fifteen to twenty seconds between the shots. Another witness testified she heard two or three shots. Another witness heard three or four shots, a pause, and then a second round of four or five shots. This witness said Ross shot Joevante during the second round of shots. Milton heard Ross shoot three shots, Roelandt return one shot, and Ross shoot four more shots. Although the identity of the victim is the same in both crimes, the general assembly's intent in criminalizing intimidation with a dangerous weapon with intent recognizes a defendant may assault the same victim twice, as long as the assaults are separate and distinct acts. *See Velez*, 829 N.W.2d at 584 (finding two separate crimes against the same victim). Another factor is that Joevante's act of crossing the street after the first series of shots was an intervening act causing Ross to start firing his gun again. Thus, the record supports only two separate and distinct acts. The first act occurred before the pause and the second after the pause when Ross shot Joevante.

We cannot find any evidence to support a finding the first set of shots and the second set of shots were nothing more than two continuous acts. The record is devoid of any evidence that Ross changed his position while shooting his weapon. The record also indicates that Ross aimed all his shots at the assembly of people in the street. The record does not show any intervening act occurred during the first set of continuous shots or during the second set of continuous shots.

Therefore, the evidence was not substantial to convince a rational jury that Ross was guilty beyond a reasonable doubt on all five counts of intimidation with a dangerous weapon with intent. However, we do find

substantial evidence supports Ross's conviction for two counts of intimidation with a dangerous weapon with intent based on the factors enumerated. The first set of shots constituted one continuous crime of intimidation with a dangerous weapon with intent. The second set of shots constituted another continuous crime of intimidation with a dangerous weapon with intent.

Accordingly, had trial counsel made the proper motion, the court would have only upheld two counts of intimidation with a dangerous weapon with intent. Failing to make the proper motion prejudiced Ross by allowing the jury to convict Ross of three additional felonies. We find trial counsel was ineffective for failing to make the proper motion. The proper remedy is to vacate Ross's conviction on three counts of intimidation with a dangerous weapon with intent.

## V. Summary and Disposition.

We affirm Ross's conviction for voluntary manslaughter and for two counts of intimidation with a dangerous weapon with intent. We reverse Ross's conviction for three counts of intimidation with a dangerous weapon with intent. We preserve for a postconviction relief action Ross's claim his trial counsel was ineffective for failing to properly request that a deposition of an unavailable witness be read to the jury. We also agree with the court of appeals the district court did not abuse its discretion in failing to admit certain photographs into evidence. Thus, we affirm in part and vacate in part the court of appeals decision. We also vacate Ross's sentences on all his convictions because the district court ran each sentence consecutively. Therefore, we remand the case to the district court for resentencing on the conviction for voluntary manslaughter and for the two convictions for intimidation with a dangerous weapon with intent.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, SENTENCES VACATED, AND CASE REMANDED FOR RESENTENCING.**