# IN THE COURT OF APPEALS OF IOWA

No. 14-0423
Filed February 25, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEVON ALLEN ANDERSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.

        Devon Anderson appeals from a conviction of intimidation with a

dangerous weapon.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Peter Blink, Assistant

County Attorney, for appellee.

        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Devon Anderson appeals from a conviction of intimidation with a dangerous weapon. He contends the evidence was insufficient to show he threatened to shoot a dangerous weapon in or at an occupied vehicle or in an assembly of people. We affirm.

*I.*     ***Background Facts and Proceedings*.**

At around 10:30 p.m. on August 9, 2013, shots rang out as a group of people were leaving a house in the 800 block of Logan Avenue in Waterloo. The gunfire came from a passing vehicle. Devon Anderson was identified as the shooter.

Later that night, the Black Hawk Consolidated Communications Center received a 911 call from an individual identifying herself as "Brittany." According to the dispatcher, the caller was "very urgent" and "seemed scared to be involved." The caller stated, "Okay, there's a crazy white dude carrying a gun, pointing at cars and everything on Newell Street. . . . There's violence going on, there's screamin' outside." The caller said she "heard it was the same dude that did the stuff on Logan." She further said the individual was threatening his girlfriend and "put it in her face." The caller identified the individual with the gun as Devon Anderson and his girlfriend as Alicia. The caller gave directions to a house in the 1800 block of Newell Street.

Waterloo police officers responded to the call and arrived at the house at approximately 12:30 a.m. An officer observed four or five people standing outside on the front porch and a person standing by a vehicle in the driveway. The vehicle matched the description given by dispatch. Anderson was standing

at the bottom of the steps to the house. An officer observed a gun underneath the steps. Anderson was asked to step away and was detained. Another officer retrieved the gun, which was later determined to be the same gun fired during the drive-by shooting on Logan Avenue.

Anderson was charged with two counts of intimidation with a dangerous weapon with intent, in violation of Iowa Code sections 708.6 and 902.7 (2013) (counts I and V),[1] one count of possession of a firearm as a felon, in violation of section 724.26 (count II), one count of carrying a weapon, in violation of section 724.4(1) (count III), and one count of going armed with a dangerous weapon with intent, in violation of section 708.8 (count IV). Anderson was subject to habitual offender sentencing enhancements under sections 902.8 and 902.9. A jury found Anderson guilty of all charges and he was subsequently sentenced to a period of imprisonment.

Anderson appeals. His sole challenge is to the sufficiency of the evidence supporting count V, intimidation with a dangerous weapon with intent.[2]

## II.    Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the

---

[1] Count I was based on the Logan Avenue drive-by shooting and count V was based on the Newell Street incident.

[2] To preserve error on appeal, the defendant must make a motion for judgment of acquittal. *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). Our review is then limited to the specific grounds and issues argued in this motion. *See id.* The State concedes error was preserved on this claim by Anderson's motion for judgment of acquittal at trial.

evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (internal quotation marks omitted). "However, it is the State's burden to prove every fact necessary to constitute the crime with which the defendant is charged, and the evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) (internal quotation marks omitted). "We will uphold a verdict if it is supported by substantial evidence." *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000). "When a rational fact finder is convinced by the evidence that the defendant is guilty beyond a reasonable doubt, the evidence is substantial." *Brubaker*, 805 N.W.2d at 171.

### III. *Discussion*

The relevant portion of Iowa Code section 708.6 states:

> A person commits a class "C" felony when the person, with the intent to injure or provoke fear or anger in another, shoots . . . or discharges a dangerous weapon at, into, or in a . . . car . . . occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.

With regard to count V, the only count germane to this appeal, the jury was instructed the State would have to prove the following elements of intimidation with a dangerous weapon with intent:

> 1. On or about the 10th day of August, 2013, the defendant threatened to shoot a dangerous weapon:
>     (a) at or in a vehicle which was occupied by another; or
>     (b) within an assembly of people.
> 2. The firearm was a dangerous weapon, as explained in Instruction Nos. 26 & 27.
> 3. The defendant made the threat under circumstances raising a reasonable expectation that the threat would be carried out.

4.  The occupants of the vehicle or the assembly of people actually experienced fear of serious injury, and the fear was reasonable under the existing circumstances.

5.  The defendant threatened to shoot a dangerous weapon with the specific intent to injure or cause fear or anger in the occupants of the vehicle or assembly of people.

*See* Iowa Criminal Jury Instruction 800.13. The jury was also instructed "within an assembly of people" means "into, through or within two or more persons at the same place." *See State v. Bush*, 518 N.W.2d 778, 780 (Iowa 1994); Iowa Criminal Jury Instruction 800.14.1.

Anderson's appeal concerns only paragraph one of the marshalling instruction. Specifically, he contends there was insufficient evidence "to show he threatened to shoot a dangerous weapon in or at an occupied vehicle or in an assembly of people." Under paragraph one, the State must prove one of two alternatives: that (1) Anderson threatened to shoot a dangerous weapon "in or at an occupied vehicle" or that (2) Anderson threatened to shoot a dangerous weapon "within an assembly of people." We focus our analysis on the second alternative,[3] paragraph 1(b) of the marshalling instruction—whether Anderson threatened to shoot a dangerous weapon "within an assembly of people."

At the conclusion of the State's presentation of evidence, Anderson moved for judgment of acquittal arguing, with regard to count V, that "[t]here is

---

[3] With regard to the first alternative, paragraph 1(a) of the marshalling instruction, the evidence in the record establishes Anderson was outside when he brandished the weapon on Newell Street. He was not in a vehicle at the time. Although the evidence establishes Anderson pointed the gun at vehicles, there is insufficient to establish the vehicles were occupied. Brittany, the 911 caller, said Anderson was "carrying a gun, pointing at cars and everything on Newell Street." This is not enough to establish the cars were occupied. Furthermore, Anderson's girlfriend, Alicia, testified she and Anderson were outside during their confrontation. We therefore agree with Anderson that the evidence was insufficient to show he threatened to shoot a dangerous weapon in or at an occupied vehicle, as the State was required to prove under paragraph 1(a) of the marshalling instruction.

absolutely zero, zero evidence that there was a threat . . . within an assembly of people." At the close of all the evidence, Anderson renewed his motion for judgment of acquittal. As to count V, he claimed,

> [T]here is not sufficient evidence to generate a jury question as to whether element 1 of Count V, that Devon Anderson threatened to shoot anyone with a dangerous weapon. There's absolutely no evidence presented as to that, no evidence presented . . . that it was done within an assembly of people.

The statute requires an action within an "assembly of people." Iowa Code § 708.6. The "within an assembly of people" language has been interpreted to mean "into or through two or more persons at the same place." *State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014). To meet the statutory requirement the State was required to prove, at a minimum, that Anderson threatened to shoot the gun into or through two or more persons at the same place.

The jury heard the 911 call, during which the caller, Brittany, stated Anderson was pointing a gun "at cars and everything on Newell Street." Brittany also stated Anderson was threatening his girlfriend, Alicia. Brittany said nothing about a group of people. Officers who arrived on the scene *after* the incident testified there were a number of people standing on the porch at the Newell Street residence. Another person was in the driveway and Anderson was at the bottom of the stairs. This evidence, standing alone, is insufficient to establish Anderson threatened to shoot a weapon within an assembly of people.

Anderson's girlfriend, Alicia, testified at trial during presentation of evidence on behalf of the defense. On direct examination, Alicia testified she was Anderson's girlfriend but had broken up with him a week or two before the August 9, 2013 incident: "It was, like, an on and off thing." They reunited as

boyfriend/girlfriend sometime after the incident. Alicia testified that on the evening of August 9, 2013, she went to Anderson's house and got mad when she saw him with two other girls, Sayda and Alexa. Alicia tried to fight Sayda, but Anderson put Alicia back in her car. Alicia left and drove over to Brittany's house. Alicia and Brittany were best friends at the time. Brittany and Alicia were driving back to Anderson's house when they saw Anderson, Sayda, Alexa, and another person, Willie Mac, drive by in another vehicle. Alicia assumed the foursome was headed to Alexa's house on Newell Street, so she and Brittany drove to that residence. They parked up a hill about two blocks from the house. Alicia testified she got out of the car with a golf club and walked down the hill to Alexa's house. Brittany drove the car closer to the house, parked, and stayed in the car. Alicia testified Anderson, Sayda, Alexa, Alexa's mother, and a few other persons were outside the house. Alicia confronted Anderson. She testified, "We was arguing again and it's like he was backing up the hill and I was following him, so we was basically moving all the way up the hill." During her testimony, she denied that Anderson threatened her and denied he had a firearm. Alicia said she left after about ten minutes of arguing. She testified she "got in the car and I said I was gonna call the police and I said I was gonna lie and say he had a gun. But I didn't want to do it so I told Brittany to do it for me and she did and we was on our way to her house."

On cross-examination Alicia testified as follows:

Q. And the group at Newell Street, you said that Sayda was there? A. Yes.
Q. Okay. And Alexa was there? A. Yes.
Q. And Willie Mac was there? A. Yes.
Q. And there were some other people? A. Yes.

Q. Okay. And there were just kind of a gob of people outside, right? A. Yes. Well, Sayda, Alexa and her mom, they was there but they were, like, on the porch inside, kind of, like hanging out the door.

Q. Okay. But there were other people maybe around where you and Devon were? A. Yeah.

Q. Okay. And who was that? A. I don't know them.

Q. Okay. So there were people you don't know? A. Yeah.

Q. But they were kind of— A. They were like, they got out of the car, pulled up, got out of the car and was walking through the grass to the house.

Q. And so if someone was standing back and looked, it would just look like a big group of people, right? A. Yeah, kind of.

Q. And you and Devon were in that group of people and arguing with each other? A. No, we wasn't arguing no more. I was arguing with Alexa's mom.

Q. Okay. You were arguing but everybody was still in that group? A. Yeah.

Q. So if somebody stood back and said, look at that group of people, that would describe all the people we just talk[ed] about and that includes you and that includes [Anderson]? A. Yes.

Q. Okay. And eventually you got—so you stopped talking to [Anderson] or stopped arguing with him and you switched your argument with somebody else? A. Yes.

Alicia further testified she was in the car with Brittany when the 911 call was made and that she told Brittany some things to say.

At times, it is difficult to sift through differing evidence concerning chaotic and confusing events involving numerous people—who may have varying perspectives and motives. Though Brittany's and Alicia's testimony conflict, the jurors were free to accept or reject any part of each witness's testimony and to give the testimony the weight they thought it should receive. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). "The function of the jury is to weigh the evidence and place credibility where it belongs." *Id.* (internal quotation marks removed).

"[A] court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *State v. Bentley*, 757 N.W.2d 257, 263 (Iowa 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Such is the case here. Considering the record before the jury, we conclude the jury could have reasonably believed Anderson threatened to shoot a dangerous weapon within an assembly of people at the Newell Street address. Through Brittany's 911 call, the jury could have reasonably believed Anderson threatened to shoot Alicia with a dangerous weapon, a gun. Through Alicia's testimony, the jury could have reasonably believed Anderson made the threat within an assembly of people at the Newell Street address.

We therefore affirm the judgment and sentence entered following Anderson's conviction on count V of intimidation with a dangerous weapon with intent.

**AFFIRMED.**