# IN THE COURT OF APPEALS OF IOWA

No. 16-1103
Filed September 13, 2017

**AKI MALIK ROSS,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.

　　　　The applicant appeals from the denial of application for postconviction relief. **AFFIRMED.**

　　　　Eric D. Tindal of Tindal Law Office, P.L.C., Washington, for appellant.

　　　　Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee State.

　　　　Considered by Vaitheswaran, P.J., Bower, J., and Blane, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

Aki Ross appeals from the district court's denial of his application for postconviction relief (PCR).

Ross was originally charged with one count of murder in the first degree and seven counts of intimidation with a dangerous weapon. At his jury trial, the jury heard evidence of the following:

> On March 30, 2011, Joevante Howard was walking in a neighborhood in Davenport with relatives and friends, including Joevante's uncle, Milton Howard. The group was traveling to the birthday party of Joevante's sister. The group stopped at a local gas station to pick up beer and other items before continuing to walk east on 12th Street toward the birthday party. The group passed a house at the corner of 12th Street and Pershing Avenue. The defendant Aki Ross was sitting on the porch of this house with four or five other individuals.
>
> When Ross saw the group pass the house, he went upstairs to avoid an altercation with the group. Ross recognized Milton in the group, yelled out the window to the group and to Milton, and told Milton he did not want any problems. Ross and Milton continued to talk to one another. Ross eventually went downstairs to the porch because he knew Milton and the group would not be leaving soon.
>
> Milton and Ross argued. At one point, several people on the porch physically restrained Ross, and one witness saw Ross with a gun in his waistband. The argument lasted no more than fifteen minutes. Milton told Ross to put down the gun and come into the street and fight. When Ross refused to fight, Milton ran to catch up with his group, who had continued walking down Pershing Avenue. Ross returned to the house.
>
> A short time later Ross ran into the street with the gun and began firing. The members of the group scattered. When Ross began shooting, Milton ran behind a red van on the east side of Pershing Avenue. Joevante was on the opposite side of the street. One witness testified Ross fired three or four shots and then stopped shooting. The witness testified Joevante crossed the street as Ross began firing his gun again. Milton saw a bullet hit Joevante in this second round of shots. Joevante fell. Another person, Milton's cousin Brett Roelandt, had a gun that day and fired one shot at Ross.
>
> Joevante received two gunshot wounds, one in the back of his head and the other in his right thigh. His cause of death was

the gunshot wound to the head. The bullet recovered from Joevante's head wound was a .45 caliber. The police recovered eight .45 caliber auto-cartridge cases from the scene. All eight cartridge cases came from the same firearm. The criminalist at trial could not say whether the bullets came from the same firearm. Ross stated at trial that on the day of the shooting he possessed a .45 caliber semi-automatic gun. Roelandt's gun shot .40 caliber ammunition. The police found one .40 caliber cartridge at the scene.

*State v. Ross*, 845 N.W.2d 692, 695–96 (Iowa 2014). The jury convicted Ross of the lesser-included offense of voluntary manslaughter and five of the counts of intimidation with a dangerous weapon.

Ross filed a direct appeal, and a panel of our court affirmed his convictions. He then filed an application for further review, and our supreme court granted it. On further review, the supreme court considered whether there was substantial evidence to uphold Ross's five separate convictions for intimidation with a dangerous weapon. *Id.* at 700–06. The court questioned "how many acts of assault took place on the assembly of people when Ross discharged his gun," before ultimately concluding Ross had committed only two separate, distinct acts and thus could only be convicted of two of the five charges. *Id.* at 702, 706. Based on the supreme court's decision, three of Ross's convictions for intimidation with a dangerous weapon were vacated.

Ross was resentenced, receiving a ten-year sentence for each of the three convictions. The district court ordered the three sentences to be served consecutively.

Ross then filed an application for PCR. In it, Ross argued his remaining two convictions for intimidation with a dangerous weapon should merge with his conviction for voluntary manslaughter. He cited *State v. Love*, 858 N.W.2d 721,

724–25 (Iowa 2015), in which our supreme court determined the defendant's convictions for assault with intent to inflict serious injury and willful injury causing bodily injury should merge because—although there was substantial evidence to support the two convictions—one was a lesser-included offense of the other and the jury had never been asked "to determine if there were two or more separate and distinct criminal acts." The PCR court denied Ross's application, concluding the counts of intimidation with a dangerous weapon did not merge into the conviction for voluntary manslaughter.

Ross appealed the district court's denial of his application.

Before us on appeal, Ross makes an argument he did not raise before the PCR court. He now claims his two convictions for intimidation with a dangerous weapon should "merge" into one. As our supreme court noted in *Ross*, "merge"—when properly used—denotes a lesser-included offense being subsumed by the greater offense. *See* 845 N.W.2d at 701 ("Our merger doctrine is limited to double jeopardy claims involving lesser-included offenses. Ross's argument does not involve lesser-included offenses, but rather the same statute charged multiple times." (citation omitted)). One count of intimidation with a dangerous weapon is not a lesser-included offense of a second count of intimidation with dangerous weapon.

In actuality, Ross is challenging whether there are two or more separate and distinct criminal acts to support the two separate units of prosecution and convictions for intimidation with a dangerous weapon. Even more specifically, he questions whether our supreme court is allowed to make that decision rather than a jury of his peers. But, here, the supreme court did make that decision in

his direct appeal. *Id.* at 706 (finding substantial evidence to support to counts of intimidation with a dangerous weapon because "[t]he first set of shots constituted one continuous crime of intimidation with a dangerous weapon with intent" and "[t]he second set of shots constituted another continuous crime of intimidation with a dangerous weapon."). The law-of-the-case doctrine applies and prevents us from now deciding otherwise. *See Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016) (stating the law-of-the-case doctrine means "an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case" and "extends to 'matters necessarily involved in the determination of a question' settled in a prior appeal for purposes of subsequent appeals" (citations omitted)). Moreover, as noted above, this is not an argument Ross raised before the PCR court, and he has not now raised it under a claim his PCR counsel was ineffective. Thus, it is not preserved for our review. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

For all the foregoing reasons, we affirm.

**AFFIRMED.**