## IN THE COURT OF APPEALS OF IOWA

No. 21-2010
Filed July 26, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROBERT PAUL KIMBROUGH Jr.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, James B. Malloy, District Associate Judge.

The defendant appeals from his convictions for second-degree harassment; domestic abuse assault; and domestic abuse assault, third offense. **AFFIRMED.**

Alexander Smith of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Robert Kimbrough appeals his convictions for second-degree harassment (count I); domestic abuse assault (count II); and domestic abuse assault, third offense (count III). He argues he was denied his constitutional right to a jury drawn from a fair cross section of the community, the court wrongly allowed evidence of his prior bad acts into evidence, and the court should have combined convictions in count II and count III.

**I. Background Facts and Proceedings.**

Following domestic incidents over July 8 and 9, 2021, the State charged Kimbrough with first-degree harassment (count I); intimidation with a dangerous weapon (count II); and domestic abuse assault, third or subsequent offense (count III). Kimbrough pled not guilty, and a jury trial was scheduled for October.

Leading up to trial, the State asked the court to rule on the admissibility of evidence showing Kimbrough assaulted his fiancée in November 2020. The court heard testimony from the fiancée before ruling the evidence was admissible.

On the morning the trial was set to begin, Kimbrough moved to strike the jury, arguing the jury pool did not include any person of African-American descent, which violated his right to have his case heard by a fair cross section of the community. Recognizing the three-prong test for a fair-cross-section claim, the State "concede[d] the first two issues" but "pushe[d] back on the issue of systemic exclusion" in the third prong. The court denied Kimbrough's motion.

Following two days of evidence, the jury found Kimbrough guilty of lesser-included offenses of counts I and II—second-degree harassment and domestic abuse assault, respectively. It found Kimbrough guilty as charged of count III.

Kimbrough appeals.

## II. Discussion.

### A. Fair Cross Section.

Kimbrough made a fair-cross-section claim as to the makeup of the jury pool. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crimes shall have been committed."); Iowa Const. art. I, § 10 (providing the right to "public trial by an impartial jury"); *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation."). "We review constitutional issues de novo." *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017).

> Under controlling precedents, a defendant establishes a prima facie violation of the fair-cross-section right by proving the following: (1) a group alleged to have been excluded from the jury pool is a distinctive group in the community; (2) the distinctive group's representation in the jury pool is not "fair and reasonable" when compared to the group's percentage in the community; and (3) the distinctive group's underrepresentation in the jury pool "is due to systematic exclusion of the group in the jury-selection process."

*State v. Mong*, 988 N.W.2d 305, 310 (Iowa 2023) (citation omitted).

Here, the fighting issue is proof of the third element. To the district court, Kimbrough argued:

> We would suggest . . . that the way the jury bio forms are selected is biased in itself because it does not take in to account lower income folks. It does not take into account where certain populations of minorities tend to fall in these type of computerized selections. So what we use is driver's license, what we use is voter registration. What we should be using, including those, is Title XIX applications, section 8 housing, issues that deal with immigration so that we get a true cross-section of the community, so we believe that

the process in itself—while on its face may not necessarily be discriminatory—but in practice it is because we limit where these pools are drawn from, judge.

Kimbrough "had the burden of production and persuasion in establishing a prima facie violation." *Id.* at 311. And while Kimbrough pointed to ways he believed the jury selection system could be improved, as the prosecutor argued to the district court, Kimbrough brought "no witnesses to testify regarding what our sources are, our source lists for jury selections. There [were] no witnesses testifying about why Title XIX or section 8 housing lists would be a better source list." It takes more to properly establish a claim.

> Litigants alleging a violation of the fair cross section requirement . . . have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. *This [will] almost always require expert testimony* concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion.

*State v. Lilly*, 930 N.W.2d 293, 307 (Iowa 2019) (emphasis added) (citation omitted). "Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations." *Id.* (quoting Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must Be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)).

Plus, Kimbrough's focus on run-of-the-mill jury practices cannot be the basis for a successful fair-cross-section claim under Sixth Amendment analysis. *See State v. Williams*, 972 N.W.2d 720, 724 (Iowa 2022) ("Challenges to 'run-of-the-mill' jury management practices, we said, are insufficient to show systematic

exclusion under the Sixth Amendment."); *accord id.* at 726 (Appel, J., concurring specially) ("In considering fair-cross-section challenges under the Sixth Amendment to the United States Constitution, the United States Supreme Court has established the familiar three-part test in *Duren v. Missouri*[, 439 U.S. 357, 364 (1979).]   But the Court has declared that 'run-of-the-mill' jury practices are essentially carved out of the analysis.  For purposes of the Sixth Amendment, the United States Supreme Court cases on this point are binding." (internal citations omitted)).  And Kimbrough has not argued for a different standard under the Iowa Constitution.

We agree with the district court that Kimbrough failed to establish a fair-cross-section violation.

**B. Prior Bad Acts Evidence.**

Kimbrough claims the district court wrongly admitted evidence he previously assaulted his fiancée.  We review for an abuse of discretion, meaning we reverse "if the grounds or reasoning for admission were 'clearly untenable or clearly unreasonable.'"  *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021) (citation omitted).

The district court is required to engage in a three-part test to determine the admissibility of prior bad acts evidence.  *State v. Thoren*, 970 N.W.2d 611, 626 (Iowa 2022).

> The court must first "determine whether the evidence is relevant to a legitimate, disputed factual issue."   Second, the evidence must provide "clear proof" that the defendant engaged in the act.  Mere speculation or hearsay is not enough, but "[t]estimony of credible witnesses can satisfy the clear-proof requirement."  Finally, the court must consider whether the evidence's "probative value is

substantially outweighed by the danger of unfair prejudice to the defendant."

To satisfy the first element, the party introducing the evidence must "articulate a tenable noncharacter theory of logical relevance" between that evidence and a legitimate, disputed factual issue. Although not all-inclusive, [Iowa Rule of Evidence] 5.404(b)(2) includes a list of acceptable ways that prior bad acts evidence can be relevant to a legitimate issue: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

*Id.* (first alteration in original) (internal citations omitted).

Here, the State argued the prior assault was relevant to show Kimbrough's motive and intent. More specifically, the State argued it was relevant to show "the nature of the relationship between [Kimbrough] and [the fiancée]. The angry and violent nature of the parties' relationship was a condition which would motivate [Kimbrough's] alleged conduct on July 8, 2021." The State pointed out that with at least one of the allegations—that Kimbrough struck a laundry basket, which then flew across the room and hit the fiancée in the face—the State anticipated Kimbrough arguing he did not have the requisite intent. Thus, the prior bad acts were relevant to show Kimbrough's pattern of behavior and supported an element of the assault charge, which required the State to prove an intent to hurt or scare his fiancée.

On appeal, Kimbrough seems less focused on whether the evidence was properly admitted and more focused on whether the State wrongly used the evidence of the prior assault as propensity evidence; he narrows in on part of the State's closing argument, when the prosecutor said, "There's something else you can use here to know whether or not he intended to place her in fear, and that's what happened back in November." First, we think the prosecutor's other

statements before the picked-out sentence provide important context—the prosecutor said:

> In the jail video we watched [Kimbrough] admitted to Deputy Schmitz that he had his finger in her face. That's consistent with this. . . . And his admission to knocking stuff around is consistent with slapping a basket across the bed. So the question is did he have the intent to put her in fear of offensive physical contact when he did these things? And [the fiancée] said, well, he said he didn't mean to hit me. But I don't have to prove he meant to hit her. I only have to prove that he meant to place her in fear.
> There's something else you can use here to know whether or not he intended to place her in fear, and that's what happened back in November. Okay.

And second, Kimbrough made no contemporaneous objection that the prosecutor was urging the jury to use the evidence for an improper purpose.

Insofar as Kimbrough challenges the district court's admission of the evidence to show Kimbrough's intent, we note that intent is seldom proved by direct evidence. *See State v. Taylor*, 689 N.W.2d 116, 129 (Iowa 2004). And here, intent was a contested issue. As in *Taylor*, evidence that Kimbrough has previously assaulted the fiancée "was strong proof that he knew his [fiancée] would be frightened by his conduct and therefore that his act was intended to result in physical contact that would be insulting or offensive to the victim." *Id.* at 129; *accord id.* at 125 (noting defendant's prior conduct against a victim can reveal their emotional relationship, thus is highly probative of defendant's probable motivation and intent in subsequent situations). The district court did not abuse its discretion in admitting the challenged evidence.

However, as our supreme court has repeatedly done, we urge the district court "to give a limiting instruction even if not requested." *Thoren*, 970 N.W.2d at 627. The prior-bad-acts evidence was only properly admissible for a limited

purpose, and the jury should be told that it can only consider the evidence for those predetermined, legitimate issues—not propensity. *See State v. Rodriguez*, 636 N.W.2d 234, 243 n.2 (Iowa 2001) ("Prejudice to the defendant can be limited with the use of a cautionary instruction explaining the purpose for which the prior acts evidence may be used. . . . In the future, trial courts would be wise to give such an instruction to the jury, even if not specifically requested by the defendant, whenever bad acts evidence is introduced for a limited purpose.").

### C. Combining Convictions.

Kimbrough argues his convictions for domestic abuse assault (count II) and domestic abuse assault, third offense (count III) should have combined[1] because there was only one act or offense for the two separate convictions. We review for errors at law. *See State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015).

"It is well established in Iowa law that a single course of conduct can give rise to multiple charges and convictions." *State v. Velez*, 829 N.W.2d 572, 584 (Iowa 2013). But Kimbrough urges us to adopt the position of the dissent in *Velez*, which asserted that "repeated acts in a single course of criminal conduct perpetrated against the same victim [should not be] distinct units of prosecution." *Id.* at 586 (Wiggins, J., dissenting). We are not at liberty to do so. *Figley v. W.S.*

---

[1] While Kimbrough frames this issue as one of merger, "[o]ur merger doctrine is limited to double jeopardy claims involving lesser-included offenses." *State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014). Like in *Ross*, Kimbrough's "argument does not involve lesser-included offenses, but rather the same statute charged multiple times. Accordingly, we recognize [Kimbrough] as using the word 'merger' in his brief in its general definition of '[t]he act or instance of combining or uniting' to ask us to combine his convictions." *Id.* (second alteration in original) (citation omitted).

*Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) ("[W]e are not at liberty to overturn precedent of our supreme court.").

And Kimbrough does not challenge his convictions under the law as it currently stands—allowing "multiple punishments for multiple completed acts." *Velez*, 829 N.W.2d at 585. So we do not consider his claim further.

**AFFIRMED.**