# IN THE COURT OF APPEALS OF IOWA

No. 13-1240
Filed April 22, 2015

**RICHARD MILLER,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        Richard Miller appeals from the district court's denial of his application for

postconviction relief, asserting claims of ineffective assistance of counsel, among

others.  **AFFIRMED.**


        Thomas P. Graves of Graves Law Firm, P.C., Clive, for appellant.

        Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney

General, John P. Sarcone, County Attorney, and Jeffrey K. Noble, Assistant

County Attorney, for appellee State.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Richard Miller appeals from the district court's denial of his application for postconviction relief, asserting claims of ineffective assistance of counsel, among other things. Upon our review, we affirm.

### I. *Background Facts and Proceedings*.

Following a jury trial, Richard Miller was found guilty of burglary in the first degree, in violation of Iowa Code sections 713.1 and 713.3 (2009), and assault causing serious injury as an habitual offender, in violation of sections 708.1, 708.2(4), and 902.8. We affirmed his conviction on his direct appeal. *See State v. Miller*, No. 09-1708, 2011 WL 3115490 (Iowa Ct. App. July 27, 2011). There, we set forth the following relevant facts.

In January 2009, Miller's daughter reported Miller had shown up at her home intoxicated, forced his way into her home when she denied him entry, fought with her, and during their argument, struck her child in the back of her head with a knife. *See id.* at *1. Miller's four-month-old granddaughter suffered a skull fracture and a subdural hematoma, and Miller was subsequently charged. *Id.* Miller denied he had caused the child's injury, asserting his daughter's paramour dropped the child when her paramour fled from the scene with the child. *See id.* at *8.

The matter proceeded to trial. *Id.* at *3. During the State's case-in-chief, the child's mother and a police officer both made references in their testimony to Miller's violent history, in violation of Miller's motion in limine. *Id.* Miller's trial counsel requested a mistrial based upon the cumulative effect of both violations, and the mistrial was granted. *Id.*

A second jury trial began on August 12, 2009. *Id.* at *4. Ultimately, the jury found Miller guilty of first-degree burglary and assault causing serious injury. *Id.* at *5. A jury also found Miller was the same person previously convicted of two felonies, for purposes of the habitual-offender-sentencing enhancement. *Id.*

In 2011, Miller filed a pro se application for postconviction relief (PCR) asserting seven claims, including ineffective assistance of trial counsel, double jeopardy, and insufficient evidence to support his convictions. After PCR counsel was appointed, Miller filed an amended PCR application through counsel again claiming he received ineffective assistance of trial counsel and incorporating his other claims asserted in his original pro se application.

A PCR trial commenced on January 24, 2013, and Miller appeared that day by phone. After several witnesses testified, including Miller's trial counsel, technical difficulties arose causing Miller to have a hard time hearing the trial. At that point the court then continued the trial to allow Miller to be physically present, and the PCR trial resumed on April 29, 2013. There, Miller's PCR trial counsel requested the PCR judge recuse himself because Miller believed the judge, who had also served as the trial judge in Miller's second trial, may have had "some preconceived notions or biases." The State resisted, and the judge denied Miller's request on the record, explaining he did not "recall much" about Miller's criminal trial, and he stated he believed he could be fair and unbiased and had "no prejudice or bias whatsoever in regard to [Miller] or any issues in this case."

Following trial, the PCR court entered its order denying Miller's application. The court found several of Miller's PCR claims had been decided

previously on direct appeal. The court also determined Miller failed to establish his claims of ineffective assistance of counsel.

Thereafter, Miller filed motions for a new PCR trial and to amend and enlarge the PCR's court's ruling. Miller now appeals.

## II. Discussion.

On appeal, Miller again asserts, pro se, several claims previously addressed by this court on direct appeal. Additionally, he argues the PCR court erred in finding Miller failed to establish his claims of ineffective assistance of counsel because his trial counsel did not call the expert or lay witnesses he wanted at trial. He also raises several claims for the first time in this appeal, including: trial counsel was ineffective for seeking a mistrial in the first trial, and PCR trial counsel was ineffective for not raising this issue in the PCR trial proceedings; the district court judge in the PCR case was biased and should have granted his recusal request; and the habitual offender enhancement should not have been applied to his sentence. We address his arguments in turn.

### A. Claims Decided on Direct Appeal.

Miller acknowledges that this court in his direct appeal ruled on issues he reasserted in his PCR pro se application, but he maintains his appellate counsel did not "bring[] up the correct principle[s]" in his direct appeal. He directs us to his brief, but the claims set forth there are restatements of the same arguments raised and already decided on direct appeal. For instance, he asserts the trial court erred in not dismissing the charges against him on double jeopardy grounds, maintaining the errors made by the State's witnesses that led to the mistrial were intentional. However, we explicitly determined in our opinion

affirming Miller's conviction that, "[u]pon our review of the record, we do not find the prosecution goaded the defendant to move for a mistrial," nor did we find any "reason to disagree with the district court's finding the errors were unintentional and inadvertent." *Miller*, 2011 WL 3115490, at *6. We also found there was substantial evidence in the record to support both of his convictions, the trial court did not abuse its discretion in admitting the excerpts of recorded phone conversations Miller had while in jail, and the trial court did not err in permitting an officer to testify who was identified by the State in a motion of additional witnesses. *See id.* at *8-10. We also rejected on direct appeal Miller's pro se claims that the State was required to call as a witness at trial an officer identified in the minutes of testimony, as well as his claim "the district court erred by holding his retrial more than ninety days after the indictment was filed" because his retrial actually occurred eighty-five days after his mistrial. *See id.* at *9-10.

PCR proceedings are "not intended as a vehicle for relitigation, on the same factual basis, of issues previously adjudicated, and the principle of [r]es judicata bars additional litigation" of previously adjudicated issues. *State v. Wetzel*, 192 N.W.2d 762, 764 (Iowa 1971). The issues identified above are, in effect, direct attacks on this court's holding on direct appeal. *See Miller*, 2011 WL 3115490, at *1-8. Under our rules of appellate procedure, Miller's remedy was to seek further review of our decision from our supreme court. *See* Iowa R. App. P. 6.402. He did not do so. Our decision on direct appeal is thus final as to all issues decided therein and is binding upon both the PCR court and this court in subsequent appeals. *See State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987). Miller cannot now relitigate issues decided adversely to him on direct

appeal. *See Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986) ("Issues that have been raised, litigated, and adjudicated on direct appeal cannot be relitigated in a postconviction proceeding."); *LeGrand v. State*, 540 N.W.2d 667, 669 (Iowa Ct. App. 1995) (declining to "readdress the propriety of our prior decision" in a postconviction proceeding raising a claim previously decided on direct appeal). Consequently, the PCR court did not err in finding these issues identified above had previously been decided by this court and in failing to address these claims any further. Accordingly, we affirm on these issues.

### B. Other Claims Raised in PCR Proceedings.

### 1. Ineffective Assistance of Counsel.

In addition to those claims previously decided on direct appeal, Miller also asserted in his PCR application that his trial counsel was ineffective in not calling witnesses he requested "to establish an alternative explanation for the child's injury." Our review is de novo. *See Rhoades v. State*, 848 N.W.2d 22, 26 (Iowa 2014).

Ineffective-assistance-of-counsel claims are analyzed under the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014). Specifically, to succeed on his ineffective-assistance-of-counsel claims, Miller must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsels' failure. *Dempsey v. State*, ___ N.W.2d ___, 2015 WL 1086220, at *6 (Iowa 2015). Because reversal is only warranted if both prongs of this test are proven by a preponderance of the evidence, *see id.*, we can affirm

the PCR court's rejection of Miller's claims if we determine either prong is absent. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).

In determining whether Miller's trial counsel failed to perform an essential duty, our review begins with the presumption that his counsel performed competently. *See id.* We then "proceed to an individualized fact-based analysis," measuring his counsel's "performance against prevailing professional norms" to determine whether Miller has shown his counsel performed below the "reasonably competent attorney" standard. *See id.* (internal citations and quotation marks omitted). Our supreme court has explained:

> Ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel. When counsel makes a reasonable tactical decision, [we] will not engage in second-guessing. Selection of the primary theory or theories of defense is a tactical matter.

*Id.* (internal alterations, citations, and quotation marks omitted). Consequently, showing that counsel's "trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently" is not enough to prove counsel breached an essential duty. *Ross*, 845 N.W.2d at 698. Nor is it enough to claim that counsel should have done a better job. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

Moreover, even if Miller "can show his counsel made a professionally unreasonable error, the judgment shall not be set aside unless it can be shown the error had an effect on the judgment." *Lamasters*, 821 N.W.2d at 866. "This requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial." *Ross*, 845 N.W.2d at 698. It is not enough to show that counsel's error imaginably "could have influenced the outcome" of the proceeding. *Lamasters*, 821 N.W.2d at 866. Instead, it must be affirmatively proven "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Stated another way, Miller must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* Thus, Miller must both "state the specific ways in which counsel's performance was inadequate and identify how competent representation *probably would have changed the outcome*." *Dunbar*, 515 N.W.2d at 15 (emphasis added).

### a. Lay Witnesses.

Miller argues his trial counsel failed to present evidence to corroborate his story that it was not he who injured the child, but rather his daughter's paramour who fled from the fight that night with the child. Miller asserts that if his trial counsel had called various persons Miller wished to have testify, the outcome of his trial would have been different. Three of those persons, one Miller's sister and the other two Miller's other children, were designated by Miller's attorney as potential trial witnesses, and they were deposed by the State prior to his trial for discovery purposes. The State elicited testimony from these witnesses concerning Miller's history of violence, including his abuse of his children's mother and other family members. Additionally, the State played audio clips during their depositions of recorded jailhouse calls between the witnesses and Miller, which could be interpreted as Miller trying to tell those witnesses how to

testify, as well as asking them to contact the child's mother to change her testimony. The recorded calls also contained admissions by Miller that "he had entered the scene where the burglary took place and took a knife away from [the child's mother]." Miller's trial counsel testified he did not call these witnesses to testify because there was no benefit, explaining that none of those witnesses were present when the child was injured and their testimony would allow the State to cross-examine them with even more jailhouse phone calls, which would have been even more hurtful to Miller's case.

Upon our de novo review of the record, we agree with the PCR court that Miller failed to establish his trial counsel breached his duty in not calling these witnesses or that the outcome of his trial would have been any different had they testified. Though Miller attempts to paint their potential testimony in a positive light, it is clear upon our review of the record that the tactical decision made by Miller's trial counsel not to call these witnesses on Miller's behalf was more than reasonable. Based upon these witnesses' discovery depositions, it is clear that these witnesses' trial testimony would have provided Miller little-to-no benefit and likely would have caused far more harm to Miller's case, rather than change the outcome as Miller suggests. Miller has failed to prove his trial counsel rendered ineffective assistance for not calling these witnesses to testify, and we affirm on this issue.

### b. Expert Witness.

Miller also argues pro se that his trial counsel should have presented expert testimony to show whether the child's injury was caused by a fall or by a direct hit. We agree with the PCR court that Miller failed to establish his trial

counsel breached his duty or that the trial's outcome would have been any different. At no time has Miller presented any independent evidence that an expert could make this determination or that an expert opinion exists opining the child's injury was caused by a fall. *See Dunbar*, 515 N.W.2d at 15. Just as we will not predicate error on speculation, *see State v. Belt*, 505 N.W.2d 182, 185 (Iowa 1993), we will not predicate a finding of ineffective assistance on speculation. We affirm on this issue.

### 2. *Judicial Bias*.

Miller also challenges pro se the PCR judge's denial of his request that the judge recuse himself from the proceeding. We review the "judge's recusal decision for an abuse of discretion," and the burden lies with Miller to prove grounds for recusal. *See State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005).

Iowa Code of Judicial Conduct rule 51:2.11(A)(1) provides: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might *reasonably* be questioned . . . ." (Emphasis added). Mere speculation as to judicial bias is not sufficient to prove the grounds necessary for recusal, *see State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994), nor is a judge's perception or attitude arising from the judge's participation a disqualifying factor. *See Millsap*, 704 N.W.2d at 432. Rather, personal bias or actual prejudice stemming from an extrajudicial source must be shown. *See id.*

Here, the PCR judge informed Miller he did not recall his trial or have any bias or prejudice against Miller, and Miller has not shown otherwise. Miller has only voiced speculation, which is not enough. We conclude the court did not abuse its discretion in denying Miller's recusal request.

### 3. Motion for New PCR Trial.

Miller next claims pro se the PCR court erred in not ruling upon his motion for a new trial. Because he filed his notice of appeal prior to receiving rulings on his posttrial motions, he removed the matter from the PCR court's jurisdiction. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000) (noting the filing of a notice of appeal extinguishes the district court's jurisdiction to rule on a posttrial motion). Consequently, we find no error.

### C. Claims Raised for First Time on Appeal.

### 1. Motion for Mistrial.

Miller also claims his PCR trial counsel was ineffective because she did not assert a claim that Miller's trial counsel was ineffective for seeking a mistrial. He points to his trial counsel's testimony at the PCR trial that his "one regret was asking for the mistrial in the first trial." Miller's trial counsel explained:

> [M]istrials are horrible for the defense because [the State] was able to identify . . . the weaknesses in [its] case, and, you know, [the defense] basically got obliterated at the second trial. [The State] introduced jail recordings of [Miller]. At this point [the State] knew, you know, where we were going with our defense. [Its] witnesses testified better at the second trial than they did the first.

Miller maintains that, "[l]ogically, if it is ineffective to not ask for mistrial when appropriate to do so, then, it can also be ineffective to seek a mistrial when that is not appropriate." While the proposition may arguably be true, Miller has not demonstrated it applies in his case.

Here, there is no question that the State's witnesses violated the court's ruling on Miller's motion in limine and testified to Miller's prior bad acts. Had Miller's trial counsel *not* sought a mistrial, Miller might have had a claim. *See,*

*e.g.*, *State v. Reynolds*, 765 N.W.2d 283, 295 (Iowa 2009) ("It was prejudicial error to admit the prior bad acts, even though the evidence was relevant to [the defendant's] motive. We . . . remand the case for a new trial."); *State v. Graves*, 668 N.W.2d 860, 882 (Iowa 2003) ("Thus, absent an objection or a request for a mistrial, there was no way to address the prosecutor's misconduct. Under these circumstances, we do not think defense counsel's failure . . . can be justified as a trial strategy that fell within the range of reasonable professional assistance."). However, Miller cannot have it both ways. *See State v. Duncan*, 710 N.W.2d 34, 43 (Iowa 2006) ("It would be strange indeed for us to allow [the defendant] to use what he now contends is irrelevant and prejudicial evidence to support this theory of self-defense and following an unfavorable verdict allow him to urge reversal on appeal based on the same evidence. He cannot have it both ways."); *State v. Hutchison*, 341 N.W.2d 33, 42 (Iowa 1983) ("The defendant is not entitled to have it both ways . . . . [He] cannot knowingly and intelligently make an election to proceed pro se and then, having lost his trial on the merits, seek a reversal on appeal by claiming ineffective assistance of counsel."). There was a proper basis to seek a mistrial, and the district court's colloquy with Miller after the mistrial motion was made in the first trial confirmed Miller was in agreement with his trial counsel's request for a mistrial. Miller has not shown his trial counsel failed to perform an essential duty. Consequently, his PCR counsel had no duty to raise this meritless claim and was therefore not ineffective. *See State v. Rodriguez*, 804 N.W.2d 844, 849 (Iowa 2011); *Holmes v. State*, 775 N.W.2d 733, 737 (Iowa Ct. App. 2009). Accordingly, we affirm on this issue.

### 2. Illegal Sentence.

Miller also asserts the habitual offender enhancement should not have been applied to his sentence and was therefore illegal. Because an illegal sentence may be corrected at any time, we address his argument. *See Kurtz v. State*, 854 N.W.2d 474, 478 (Iowa Ct. App. 2014). Our review is for errors at law. *Id.*

Miller's argument is not clearly articulated, but it appears he believes he was convicted of assault *with intent to inflict* a serious injury, an aggravated misdemeanor, to which the enhancement would not apply. *See* Iowa Code §§ 708.2(1), 902.8. However, he was found guilty of assault *causing* serious injury, a different offense, which is a class "D" felony. *See id.* § 708.2(4). His argument is therefore without merit, and we affirm on this issue.

### IV. Conclusion.

We have carefully considered all of the claims raised by counsel and by Miller pro se, and we find the claims addressed above lack merit. Moreover, those not addressed specifically in this decision are either disposed of by our resolution of other claims or are also without merit. Accordingly, we affirm the PCR court's ruling denying Miller's PCR application.

**AFFIRMED.**