# IN THE COURT OF APPEALS OF IOWA

No. 22-0699
Filed May 24, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANA ELIZABETH KIRGAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Terry R. Rickers,

Judge.

        Following a bench trial, the defendant argues there is insufficient evidence

to support her convictions for intimidation with a dangerous weapon and going

armed with intent.  **REVERSED AND REMANDED.**

        Austin Jungblut of Parrish Kruidenier Dunn Gentry Brown Bergmann &

Messamer L.L.P., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.

        Heard by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Following a trial to the bench, Dana Kirgan appeals her convictions for intimidation with a dangerous weapon and going armed with intent.[1]  She challenges each conviction, arguing it is not supported by substantial evidence.

**I. Background Facts and Proceedings.**

After a domestic disturbance took place at the family home on May 3, 2020, Kirgan was charged by trial information with intimidation with a dangerous weapon (count I), going armed with intent (count II), and domestic abuse assault with a dangerous weapon (count III).  Kirgan was also charged with the simple misdemeanor of reckless use of a firearm.  She pled not guilty to each of the four charges and waived her right to a jury trial.

The case was tried to the bench in July 2021; the facts were largely undisputed.  Travis (Kirgan's husband) and Briston (Kirgan's adult daughter) were home preparing a Sunday meal on May 3.  Travis and Briston had recently learned that Kirgan was engaged in an affair, and Kirgan had not come home the night before.  When she returned to the family home that Sunday afternoon, Travis and Briston were unwelcoming and wanted her to leave.  The three argued inside the

---

[1] The court also found Kirgan guilty of domestic abuse assault with a dangerous weapon; the court merged this conviction with Kirgan's conviction for intimidation with a dangerous weapon.  Because we do not know how the district court will resolve the case involving the charge of going armed with intent, we note merger may apply again.  We remind the district court that it earlier correctly said:

> However, if there's a conviction on that [aggravated domestic assault] charge, its sentence would merge into either going armed with intent or intimidation with a dangerous weapon or both depending on the ultimate verdict of the case.  So while it's possible that a conviction for aggravated domestic assault could occur, in terms of sentencing the Court could not impose additional sentence time or additional fine on the aggravated domestic assault case.

home. At some point Travis took Kirgan's car keys, and he and Briston went outside to retrieve his debit card from Kirgan's purse, which was in the car. Kirgan went outside too, and the verbal fighting continued. Briston dumped lemonade on Kirgan's car and, eventually, Travis and Briston went back inside the home; they locked Kirgan outside.

At that point, Kirgan went to her car, which was parked to the west of the house in the driveway, and got her .38 revolver. Travis was standing in one of the doorways at the back of the home, and he watched Kirgan walk back around the side of the house with the revolver at her side, pointed to the ground. Then, with the family home behind her, Kirgan lifted her arm and fired the gun toward the outbuilding and cornfield south of the family home. We include defendant's exhibit A, which shows the layout of the Kirgan property (the Kirgan home has the green roof):



While looking at Travis, Kirgan asked "Now what?" and then walked toward him—still holding the gun. Travis took off running through the home; he called a friend to contact 911 on his behalf and shouted to Briston, "She's got a gun, she's going to kill me, run!" Briston and Travis exited the home through the front door; they continued down the road on foot until they encountered Deputy Sheriff Jon Wilbur, who had been dispatched to the Kirgan home based on a 911 call. According to Deputy Wilbur's testimony at trial, both Briston and Travis appeared scared when he came upon them.

After speaking with Briston and Travis, Deputy Wilbur went to the Kirgan home, where Kirgan was sitting in her still-parked vehicle drinking an alcoholic beverage. Kirgan initially lied about discharging a firearm but later admitted she walked around the southwest corner of the home, saw Travis standing in one of the doorways, and fired a shot to the south before walking toward Travis with the gun still in her hand.

In a written ruling read in open court, the district court found Kirgan guilty of each of the four charges.

Kirgan moved in arrest of judgment and for new trial, which the district court denied before sentencing. When entering judgment, the court merged count III with count I. Kirgan was sentenced to a term of incarceration not to exceed ten years with a five-year mandatory minimum on count I, a term of incarceration not to exceed five years on count II, and thirty days on the reckless-use-of-a-firearm

conviction.  She was ordered to serve the three sentences concurrently.  Kirgan appeals.[2]

## II. Discussion.

Kirgan challenges the sufficiency of the evidence supporting her convictions.  "In determining whether there was substantial evidence, we view the evidence in the light most favorable to the State."  *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997).  "Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt."  *Id.*  "In determining if there was substantial evidence, we consider all of the evidence in the record, not just the evidence supporting a finding of guilt."  *Id.*  That said, we review the district court's interpretation of a statute for correction of errors at law.  *State v. Green*, 680 N.W.2d 370, 372 (Iowa 2004).  And we are not bound by the district court's conclusions of law.  *Id.*

### A. Intimidation with a Dangerous Weapon.

The district court set out the elements the State had to prove for Kirgan to be properly convicted of intimidation with a dangerous weapon:

> 1. On or about May 3, 2020, [Kirgan] discharged a firearm within an assembly of people.
> 2. The firearm was a dangerous weapon, as defined in Iowa Code Section 702.7 [(2020)].
> 3. The victim(s) actually experienced fear of serious injury and their fear was reasonable under the existing circumstances.
> 4. [Kirgan] discharged the firearm with the specific intent to injure or cause fear or anger in the victim(s).

---

[2] Kirgan asked for discretionary review of her misdemeanor conviction for reckless use of a firearm.  Our supreme court denied her request before transferring the case to us, so that conviction is not part of this appeal.

Kirgan challenges the evidence supporting two of the four elements, arguing the State failed to prove (1) she discharged a firearm "within an assembly of people" and (2) that her husband and daughter "experienced fear or serious injury and their fear was reasonable." *See State v. Williams*, 674 N.W.2d 69, 71 (Iowa 2004) ("At trial, the State must prove every element of the crime charged beyond a reasonable doubt.").

We start by considering whether there is substantial evidence Kirgan discharged the weapon within an assembly of people. The district court reasoned she did, though Briston and Travis were inside the home and not in the direction that Kirgan fired, because:

> The Britannica dictionary defines an "assembly," among other things, as "a group of people who have gathered together." Travis, Briston, and [Kirgan] were clearly gathered together on the afternoon of May 3, 2020. During any family gathering, regardless of how dysfunctional it may be, stepping outside to a backyard while remaining on the premises does not exclude someone from being part of the ongoing gathering.

(Internal footnote omitted.) The district court did not need to turn to the dictionary to define "assembly." In *State v. Bush*, our supreme court held that a person discharges a firearm within an assembly of people when the person discharges the gun "into or through two or more persons at the same place." 518 N.W.2d 778, 780 (Iowa 1994). The district court's definition seems to turn on the subjective mental state of the people in the area—whether they voluntarily gathered at the same location at some point in time for a common purpose. But this misses the point of the supreme court's interpretation, which focuses on the location of the people in relation to the projectile—whether the firearm was discharged "*into* or *through* two or more persons at the same place." *Id.* (emphasis added). As a

panel of this court explained before, "The statutory focus is where the shot is directed, not on the location of the shooter. The harm to be avoided is the aiming and firing of a dangerous weapon 'into or through two or more persons at the same place.'" *State v. Jefferson*, No. 07-1839, 2008 WL 5235170, at *2 (Iowa Ct. App. Dec. 17, 2008) (quoting *Bush*, 518 N.W.2d at 780). And, of course, we are required to apply the law as interpreted by the supreme court. *See Atchison v. Shaffer*, No. 14-1555, 2016 WL 5929999, at *2 (Iowa Ct. App. Oct. 12, 2016) ("[W]e are bound by supreme court precedent.").

Here, it is undisputed Kirgan did not shoot into or through any persons; she shot toward a cornfield, which was empty and in the opposite direction of Briston's and Travis's locations. Briston was in the kitchen of the home and Travis was in a doorway at the back of the home. The home was to the north of where Kirgan stood when she fired the shot. Briston did not see it, but Travis did; he testified Kirgan fired the gun "towards [his] shop, south" where there is "the garage, an outbuilding, and a cornfield." Kirgan testified similarly, stating she "shot one shot kind of in between two buildings south of the house. . . . It was into a cornfield." As Travis admitted, Kirgan never even pointed the weapon in his direction.

While Briston, Travis, and Kirgan were all on the same property at the time Kirgan discharged the gun, the shot was not in the direction of any person.[3] There

---

[3] The State also urges us to rely on Deputy Wilbur's testimony that, when deciding to charge Kirgan with intimidation with a dangerous weapon, he considered that "it was unknown how many people were to the south in those properties where the round was discharged towards. . . . There is a field off to the south and the east, correct. But where their street goes back there are other houses back going farther south."

But these "unknown persons" cannot satisfy the statutory elements either. First, there is no evidence how many people were present at these properties at

is not substantial evidence to support Kirgan's conviction for intimidation with a dangerous weapon. *Cf. Bush*, 518 N.W.2d at 780 (holding substantial evidence supported the defendant's conviction when a jury could reasonably find he "fired the shot *through* [the] ring of people, thereby subjecting them to the obvious risk of severe injury and even death"); *State v. Jennings*, No. 14-2098, 2016 WL 3269545, at *5 (Iowa Ct. App. June 15, 2016) (finding substantial evidence the defendant discharged his weapon within an assembly of people when he shot into the air while "surrounded by other people in the crowded pedestrian mall" and recognizing that "a bullet shot into the air may still be dangerous"); *In re N.W.E.*, 564 N.W.2d 451, 454 (Iowa Ct. App. 1997) (affirming trial court's determination the juvenile discharged a weapon in an assembly of people "because there were four persons in front of him and two on each side of him. All persons were placed at risk when the gun was fired").

---

the time Kirgan discharged the firearm, and the statute is not met unless there are, at a minimum, two. *See State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014) (recognizing that an assembly requires "two or more persons" and so, "to meet the statutory requirement, at a minimum the State must prove that when [the defendant] discharged his firearm he placed two persons in the assembly in reasonable fear"); *cf. State v. Rivas*, No. 03-0511, 2004 WL 57660, at *4 (Iowa Ct. App. Jan. 14, 2004) (finding there was insufficient evidence to support a conviction for intimidation with a dangerous weapon in regard to a neighbor who, "during the actual incident . . . had no idea a gun was being fired or that he was potentially in danger," and concluding the neighbor's delayed fear "the next day, when he discovered what had occurred," did not satisfy the element). And because these "unknown persons" are unaccounted for (and possibly nonexistent), we are without evidence that any "unknown persons" "actually experienced fear of serious injury." *See Ross*, 845 N.W.2d at 701 ("[T]he question is whether there was sufficient evident to support a finding that [the defendant's] action of shooting objectively and subjectively placed two people in the assembly in reasonable apprehension of serious injury.").

Because the State failed to prove Kirgan discharged her firearm within an assembly of people, her conviction for intimidation with a dangerous weapon cannot stand.[4]  We reverse Kirgan's conviction on this charge.  *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003) (providing that Double Jeopardy principles prohibit a retrial "when the defendant's conviction is reversed on grounds that the evidence was insufficient to sustain the conviction").

**B. Going Armed with Intent.**

The district court also set out the elements the State had to prove to establish Kirgan's guilt for going armed with intent:

> 1. On or about May 3, 2020, [Kirgan] was armed with a weapon.
> 2. The weapon was a dangerous weapon as defined in Iowa Code Section 702.7.
> 3. [Kirgan] was armed with the specific intent to use the weapon against another person.
> 4. While armed with the weapon [Kirgan] moved from one place to another.

Kirgan challenges the third element, arguing there is not substantial evidence she was armed with the specific intent to use the weapon against another person.  "Intent to use the weapon against another person" means "intent to shoot another person."  *State v. Slayton*, 417 N.W.2d 432, 434 (Iowa 1987); *see also State v. Gipson*, No. 17-1359, 2018 WL 3650337, at *2 (Iowa Ct. App. Aug. 1, 2018) ("[A] conviction for going armed with intent requires proof that the defendant carried a dangerous weapon with the specific intent to inflict serious injury." (alteration in original) (citation omitted)).  But here, as the State recognizes in its

---

[4] We need not reach Kirgan's argument that the State failed to prove both Travis and Briston actually experienced reasonable fear of serious injury—the third element of intimidation with a dangerous weapon.

appellate brief, the district court convicted Kirgan based on its finding she had specific intent to use the weapon "to intimidate" Travis and Briston. Intimidation is not enough to satisfy the elements for going armed with intent. *See Slayton*, 417 N.W.2d at 434 ("If we adopt the State's position that the 'intent to use' element of 708.8 is satisfied by proof that defendant intended to use the gun to intimidate or harass his parents by pointing it toward or displaying it to them we would arrive at an unreasonable result."). So, we cannot affirm Kirgan's conviction on appeal.

However, because it is possible—based on the evidence already provided by the State—that a rational factfinder could conclude Kirgan intended to shoot Travis or Briston, we remand to the district court for new findings and conclusions as to this charge on the existing record. *See, e.g.*, *State v. Showens*, 845 N.W.2d 436, 449–50 (Iowa 2014) (reversing the judgment of conviction below and remanding for new findings, conclusions, and judgment on the existing record when "substantial evidence *could* support a finding" the defendant violated the statute and it was unclear whether the district court "applied the appropriate legal standard"); *State v. Pexa*, 574 N.W.2d 344, 347 (Iowa 1998) (vacating the judgment and remanding for further proceedings on the existing record when the district court misapplied the statute and "an issue of fact remain[ed] concerning the defendant's guilt").

**III. Conclusion.**

Because there was insufficient evidence to convict Kirgan of intimidation with a dangerous weapon, we reverse that conviction. A reasonable factfinder could find evidence to convict Kirgan of going armed with intent but, because the district court applied the wrong standard in reaching its decision, we reverse

Kirgan's conviction and remand to the district court for new findings and conclusions as to that charge on the existing record.

**REVERSED AND REMANDED.**