# IN THE COURT OF APPEALS OF IOWA

No. 22-1988
Filed May 8, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MILTON ANDREW BOKEMEYER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, Joel Dalrymple, Judge.

A defendant appeals his convictions and sentences for drug and firearm offenses. **CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A team of deputies raided Milton Bokemeyer's cabin in July 2021. Inside, they found methamphetamine, two unprocessed marijuana plants, mushrooms, and a firearm. A jury found Bokemeyer guilty of possession of methamphetamine and psilocybin, manufacturing marijuana while in possession of a firearm, three drug tax stamp violations, and two counts of possession of a firearm—one as a felon and one as a "prohibited person." Bokemeyer appeals, challenging the sufficiency of the evidence supporting some of his convictions and the sentences imposed by the district court. We affirm in part and reverse in part the convictions, vacate the sentences imposed, and remand for resentencing.

## I. Background Facts and Proceedings

Acting on a tip from Shauna Snyder—a homeless woman who sometimes stayed at Bokemeyer's cabin and used methamphetamine with him—deputies from the Buchanan County Sheriff's Department obtained a search warrant for Bokemeyer's residence on July 28, 2021. Snyder told them that Bokemeyer had methamphetamine, "two weed plants . . . in a tent," and a shotgun at his cabin. The deputies executed the warrant around 1:30 a.m. Bokemeyer answered the door. He was handcuffed, read his *Miranda* rights, and placed on a couch in the living room while the deputies conducted the search.

When asked whether there were any weapons in the cabin, Bokemeyer told a deputy that he had an unloaded rifle against the wall in his bedroom. The deputy found a Remington .22 caliber rifle there, along with a black safe in the closet that contained methamphetamine and mushrooms. The methamphetamine was divided between two smaller bags that were placed inside a larger one. One bag

weighed 25.32 grams, while the other weighed 28.69 grams. There were two bags of mushrooms in the safe, but only one tested positive for a controlled substance. And true to Snyder's word, the deputies found two marijuana plants in a grow tent in the hallway. They were planted in what looked like old coffee containers. Syringes, needles, glass pipes, pill bottles, and baggies were scattered throughout the cabin.

Bokemeyer was charged with (1) delivery or possession with intent to deliver more than five grams of methamphetamine while in possession of a firearm; (2) failure to affix a drug tax stamp (methamphetamine); (3) possession with intent to deliver psilocybin while in possession of a firearm; (4) failure to affix a drug tax stamp (psilocybin); (5) manufacturing marijuana while in possession of a firearm; (6) failure to affix a drug tax stamp (unprocessed marijuana plant); (7) possession of a firearm by a domestic-violence offender; and (8) possession of a firearm by a felon.[1] Before the case was submitted to the jury, Bokemeyer stipulated to being a "prohibited person" and a felon for the last two charges. He also stipulated to second-offense and habitual-offender enhancements for the drug charges.

Bokemeyer's prior offenses were from 2000 and earlier. He had been sober for several years but relapsed after the death of his son a few years before the raid on his cabin. During his closing argument at trial, defense counsel argued Bokemeyer "has a drug addiction. That's it. He's not a drug dealer." The jury

---

[1] The State dismissed a ninth charge for possession with the intent to deliver hydrocodone upon discovering that Bokemeyer had a valid prescription for the eight pills found at his cabin.

seemed to agree, finding Bokemeyer guilty of the lesser-included offenses of possession of methamphetamine and psilocybin but convicting him as charged for the other offenses. The district court sentenced Bokemeyer to a total term of incarceration not to exceed forty-five years, with a mandatory minimum of nine years.

Bokemeyer appeals, claiming the State presented insufficient evidence that he possessed psilocybin, failed to affix drug tax stamps, or possessed a firearm. If we find sufficient evidence that he possessed a firearm, Bokemeyer alternatively claims that "the evidence only supports a conviction for one violation" of Iowa Code section 724.26 (2021). Finally, Bokemeyer claims the district court considered an improper sentencing factor that requires resentencing on all of his convictions.

## II. Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). While conducting this review, we view the evidence in the light most favorable to the State, "including all reasonable inferences that may be fairly drawn from the evidence." *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017) (citation omitted). Substantial evidence to support a conviction exists when the evidence presented would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021).

### A. Possession of Psilocybin

To find Bokemeyer guilty of possession of psilocybin, the jury was instructed the State had to prove that he "knowingly or intentionally possessed psilocybin, a

controlled substance" and that he "knew that the substance he possessed was psilocybin." Similarly, for the related drug tax stamp count, the jury was instructed that the State had to prove Bokemeyer "possessed seven or more grams of a mixture of marijuana and other taxable substance (psilocybin)." *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims.").

Bokemeyer argues there was insufficient evidence to support his convictions for these offenses because the State presented no evidence showing that he possessed psilocybin. The State agrees. According to a drug chemistry report from the state crime lab, which was admitted as an exhibit at trial, only one of the bags of mushrooms from the safe in Bokemeyer's bedroom tested positive for a controlled substance. That substance was *psilocyn*, a separate controlled substance from psilocybin. *See* Iowa Code § 124.204(4)(s) (psilocybin), (t) (psilocyn). As the State acknowledges, it "did not present any evidence on the relationship between the two substances." We accordingly reverse Bokemeyer's convictions for possession of psilocybin and failure to affix a drug tax stamp for psilocybin.

## B. Remaining Drug Tax Stamp Convictions

For the remaining drug tax stamp convictions—one for methamphetamine and one for the unprocessed marijuana plants—Bokemeyer argues the State failed to present any evidence that those taxable substances did not have drug tax stamps affixed to them. We agree.

The jury instructions for the drug tax stamp counts required the State to prove that the taxable substances Bokemeyer possessed "did not have permanently affixed to it a stamp, label or other official indication of payment of the state tax imposed on the substance." *See* Iowa Code § 453B.3(1), (3). As Bokemeyer points out, after the State read the trial information to the jury, the next time drug tax stamps were mentioned was in the prosecutor's closing arguments. None of the State's witnesses testified about drug tax stamps—whether they were present or absent on the recovered drugs or what such a "stamp, label or other official indication of payment" would even look like. And the State did not admit the drugs or their packaging as exhibits at trial.

When similar proof was lacking in two of our past unpublished decisions, we reversed drug tax stamp convictions on sufficiency-of-the-evidence grounds.[2] *See State v. White*, No. 01-1444, 2002 WL 31016642, at *2 (Iowa Ct. App. Sept. 11, 2002); *State v. Avery*, No. 99-949, 2000 WL 1027287, at *3 (Iowa Ct. App. July 26, 2000). In *White,* even though "the drugs recovered were admitted as an exhibit at trial and the arresting officer testified the methamphetamine was in substantially the same condition as when he found it," we found the State's evidence was lacking. 2002 WL 31016642, at *2. We pointed out that, like here, none of the State's witnesses "testified regarding the presence or absence of a drug tax stamp at anytime during trial," the "jury was not told or shown what a drug tax stamp looks like," and the arresting officer was not asked whether the

---

[2] In another case, the State conceded there was insufficient evidence where "there was nothing in the stipulated evidence before the court showing that the drugs found by the police did not bear the required drug tax stamps." *State v. Lindsey*, No. 03-0478, 2004 WL 361399, at *2 (Iowa Ct. App. Feb. 27, 2004).

methamphetamine "was in the same container or whether a drug tax stamp was ever present." *Id.* Similarly, in *Avery*, we concluded "the introduction of the bags of marijuana themselves does not suffice to prove the charge of failure to affix a drug tax stamp." 2000 WL 1027287, at *3. We reasoned that to hold the bags of marijuana "speak for themselves"

> would carry the chain of inference too far into the realm of mere conjecture. We would have to presume the jurors knew what a drug tax stamp looked like and that they even thought to examine the bags for stamps. The jurors would have had to speculate that the bags never had stamps on them when found by the police and that the bags were not tampered with thereafter. The evidence leads to a mere suspicion of the existence of the fact sought to be proved. The inference that drug tax stamps *were* affixed to the bags is equally plausible. The State failed to carry its burden of proof.

*Id.*

The State argues, and the dissent agrees, that our reasoning in *Avery* is the same error condemned by the Iowa Supreme Court in *State v. Ernst*, which clarified that the State "need not discredit every other potential theory to be drawn from circumstantial evidence."[3] 954 N.W.2d 50, 57 (Iowa 2021). But that's not what is happening here.

Unlike the defendant in *Ernst*, Bokemeyer is not arguing "that circumstantial evidence must be 'wholly inconsistent with any rational hypothesis of his innocence.'" *Id.* (citation omitted). Rather, he is arguing "the State did not present

---

[3] The court in *Ernst* also noted

> that although inference stacking is not absolutely prohibited, the reliance on stacked inferences is pertinent to the analysis of a sufficiency of the evidence claim because a chain of inferences can become so attenuated that reliance on it to sustain a conviction would be unreasonable and would amount to speculation.

954 N.W.2d at 59 (quoting *People v. Donald*, 461 P.3d 4, 9 (Colo. 2020) (en banc)).

*any* evidence regarding the presence or absence of a stamp, label, or other official indicia evidencing the tax was paid." (Emphasis added.) The State contends "that is not accurate" because it "showed the photos and video of the plastic bag of methamphetamine and the two unprocessed marijuana plants in Bokemeyer's cabin." According to the State, the "lack of a drug tax stamp or other indicia that the tax had been paid is evident from those exhibits; all the jury had to do was look." Not so.

Starting with the methamphetamine, the State points to two photos showing a large, clear bag of methamphetamine sitting in the opened safe in Bokemeyer's bedroom closet. Only one side of that bag can be seen from the photos. While a body camera video shows a deputy taking the bag out of the safe and turning it around, as partially shown by the screenshot reproduced in the dissent, there were two smaller bags of methamphetamine inside that larger one. Those were not separately photographed or pulled out from the larger bag on the video. As for the marijuana plants, the only photo admitted as an exhibit at trial shows the plants inside the grow tent. The photo does not show a full view of the plants or all sides of their containers. And there is no video of the plants being taken out of the tent.

Yet the State argues that a reasonable inference from these photos and video "is that Bokemeyer did not affix a tax stamp. Perhaps another is that the angle of the photos and videos did not make the tax stamp visible. But in reviewing a sufficiency challenge, all reasonable inference are drawn in favor of the verdict." That's true—in part. *See Huser*, 894 N.W.2d at 490. As the court in *Ernst* explained, "[j]uries must necessarily make inferences when finding facts based on circumstantial evidence." 954 N.W.2d at 59. And there is no "strict prohibition

against stacking inferences to be drawn from circumstantial evidence." *Id.* "The relevant inquiry is not whether a fact finding is based on an inference drawn from another inference. Rather, the relevant inquiry is whether a fact finding is a *legitimate* inference 'that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted) (emphasis added).

The defendant in *Ernst* relied on another Iowa Supreme Court case—*State v. Truesdell*, 679 N.W.2d 611 (Iowa 2004)—"to argue that evidence susceptible to more than one inference is merely speculative and cannot support a conviction." 954 N.W.2d at 58. In rejecting this argument, the court in *Ernst* explained that unlike *Truesdell*, "this is not a case where inferences to establish each of the contested elements of Ernst's conviction are dependent 'upon a single piece of evidence from which two reasonable inferences could be drawn.'" *Id.* (citation omitted); *cf. Truesdell*, 679 N.W.2d at 619 (concluding that the possession of a large quantity of cold relief medicine, "without additional evidence, either direct or circumstantial, is insufficient proof of intent to manufacture under the statute. There was no additional evidence in this case"). Instead, in *Ernst*, there were multiple pieces of evidence supporting the desired inference—that the defendant entered his parole officer's garage with the specific intent to commit theft. 954 N.W.2d at 55–56 (noting "that Ernst was in the area of the garage between 10:31 a.m. and 10:44 a.m., a time he had reason to know both homeowners would not be home," "Ernst knew his parole officer's address," and he told a false story to the police).

Here, however, the only evidence the State relies on to support Bokemeyer's guilt for the drug tax stamp convictions is the partially visible drugs

from the photographs and video. "Some other evidence of guilt is required to support a conviction." *See Truesdell*, 679 N.W.2d at 619. While the dissent agrees the evidence was insufficient for the marijuana plants, our colleague states that for the methamphetamine, "[i]f there were stamps on the smaller baggies, they would be visible in either the videos (where the deputy rotated the bag and all sides were shown) or in the still photo (which was taken with a flash)." But that's speculation. The video did not show all sides of the large bag of methamphetamine or the smaller ones inside it, as the dissent seems to recognize in discussing the "more-or-less 360-degree look jurors got at the methamphetamine." And it bears repeating: the drugs themselves were not admitted into evidence, and no witness testified about drug tax stamps.

Bottom-line, inferences "cannot in and of themselves create evidence." *Walls v. Jacob N. Printing Co.*, 618 N.W.2d 282, 286 (Iowa 2000) (en banc) (citation omitted); *see also State v. Hansen*, 203 N.W.2d 216, 219 (Iowa 1972) ("[I]nferences do not affect the duty of either party to produce evidence. . . ." (citation omitted)). And that is what the State is asking us to do here. *See State v. Siimpson*, 528 N.W.2d 627, 641 (Iowa 1995) ("An inference is a reasonable deduction from proven facts; a '*permissible* finding based on the existence of other facts.'" (citation omitted)). Despite the high deference we accord the jury's verdict, "[e]vidence raising only 'suspicion, speculation, or conjecture,'" as here, is not substantial evidence. *State v. Cole*, 3 N.W.3d 200, 203 (Iowa 2024) (citation omitted). We accordingly reverse Bokemeyer's convictions for failure to affix a drug tax stamp to the methamphetamine and unprocessed marijuana plants.

### C.      Possession of a Firearm

Three of Bokemeyer's convictions included possession of a firearm as an element—manufacturing marijuana while in possession of a firearm, possession of a firearm as a domestic violence offender, and possession of a firearm as a felon.  For each of these offenses, Bokemeyer claims the State failed to prove that he "knowingly possessed or exercised dominion and control over the firearm."[4]

The jury was instructed that possession may be actual or constructive.  *See Reed*, 875 N.W.2d at 705.  Both Bokemeyer and the State focus their arguments on constructive possession, so we will as well.  *Cf. State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021) (clarifying that a defendant "can be in actual possession of a controlled substance when the controlled substance is found on the defendant's person or when substantial evidence supports a finding it was on the defendant's person at one time" (cleaned up) (citation omitted)).

Borrowing from drug-possession cases, our supreme court has said that constructive possession "exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'"  *Reed*, 875 N.W.2d at 705 (citation omitted) (applying this doctrine to firearm cases).  A defendant's "immediate possession or control" of a firearm "may be proved by showing [the defendant] had been 'in such close

---

[4] The firearm-enhancement statute, section 124.401(1)(e), requires proof that the defendant was in "immediate possession or control of a firearm." Section 724.26(1) and (2)(a) similarly require proof that an adjudicated felon has "under the person's dominion and control or possession" a firearm or that a domestic-violence offender "knowingly possesses" a firearm.    In *State v. Reed*, 875 N.W.2d 693, 708 (Iowa 2016), the court held that "[b]oth statutes require proof of actual or constructive possession."

proximity to the weapon as to claim immediate dominion over it' and that he had 'knowledge of the presence of the firearm.'"[5]  *Id.* at 708 (citation omitted).  "Such knowledge and control may be inferred if the firearm is found in a location under the defendant's exclusive control."  *Id.*

Bokemeyer argues that inference should not apply here because he "was not the only person that stayed in the cabin."  He points to testimony from Snyder—the woman who tipped off the deputies—that she was staying with Bokemeyer when his cabin was raided.  But later, Snyder testified that she had been in a different town earlier that day and gotten a ride to Bokemeyer's cabin "to see if [she] could stay there."  At another point, Snyder said that she would only stay with Bokemeyer "sporadically off and on" for a "few days or a week or a couple weeks."  There was no evidence that Snyder would stay in Bokemeyer's bedroom, where the gun was found, or that she kept any property at his cabin.  *Cf. State v. Green*, No. 19-0542, 2020 WL 5224454, at *3 (Iowa Ct. App. Sept. 2, 2020) (finding defendant jointly occupied an apartment leased by the mother of his child where he regularly stayed there three to four nights a week, he was "sleeping in the bedroom when officers arrived to execute the search warrant," and his "personal items littered the apartment").  And she was not at the cabin when the search warrant was executed.

---

[5] The jury was generally instructed that a "person who has direct physical control over a thing on his or her person is in actual possession of it," while a person who, "although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it."  Another instruction stated "'[d]ominion and control' means ownership or right to the firearm and the power or authority to manage, regulate or oversee its use."

In any event, we agree with the State there was substantial evidence that Bokemeyer possessed the rifle beyond just his occupancy of the cabin and the bedroom where the rifle was found. When asked whether there were any weapons in the cabin, Bokemeyer responded, "There's a gun in my room." He then specified that it was a rifle, it was against the wall by the window, and it was unloaded. Bokemeyer did not deny ownership of the rifle*, cf. id.*, though he now suggests it belonged to someone else—a brother to a county jailer. But that doesn't exactly match the testimony at trial, as the State points out.

On cross-examination, defense counsel questioned the deputy who found the rifle:

> Q. Did you later come to learn that an employee from the Black Hawk County Sheriff's Office would take his son out there with that rifle for target shooting? A. It was . . . I don't think he's a Black Hawk County Sheriff's employee. He's a brother to one of our jailers.
> Q. Okay. All right. And he was out there a couple days before you guys were. Is that your understanding?
> . . . .
> A. I—I can't tell you when he was out there. I—I don't know. I don't know if it was Mr. Bokemeyer or who told me that.

This is not confirmation that someone else owned the rifle, as Bokemeyer asserts on appeal. Indeed, the only evidence at trial about ownership of the rifle came from Snyder, who testified that Bokemeyer "had talked about buying one."

Viewing this evidence in the light most favorable to the verdict, we find substantial evidence that Bokemeyer knew the firearm was present in his bedroom, that he had been in such close proximity to it as to claim immediate dominion over it, and that he had the authority or right to maintain control of it. *Cf. id.* at *3 (concluding the State presented insufficient evidence that defendant

constructively possessed a firearm found in the ceiling of an apartment where he sometimes slept).  We accordingly reject this assignment of error.

## III.  Multiple Convictions for Possession of a Firearm as a Felon and as a "Prohibited Person"

The State charged Bokemeyer in separate counts for violating section 724.26 by possessing a firearm as a felon and by possessing the same firearm as a domestic-violence offender.  And the jury convicted him of each count under separate instructions identifying him as a "felon" and a "prohibited person." The district court then imposed separate sentences for the convictions, running the felon-in-possession conviction consecutively to Bokemeyer's conviction for manufacturing marijuana while in possession of a firearm.  Bokemeyer challenges these convictions and sentences, claiming the "evidence only supports a conviction for one violation of Iowa Code section 724.26. . . .  Alternatively, the district court entered an illegal sentence when it failed to combine the two convictions for possession of a firearm into a single count."

As Bokemeyer's argument recognizes, the Iowa Supreme Court has "examined similar challenges under two different frameworks"—sufficiency of the evidence and illegal sentences.  *Compare State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014) (considering whether trial counsel was ineffective for failing to move for a judgment of acquittal on five counts of intimidation with a dangerous weapon because substantial evidence did not support five separate convictions), *with State v. Copenhaver*, 844 N.W.2d 442, 447 (Iowa 2014) (examining whether the court imposed an illegal sentence by failing to combine two second-degree robbery convictions into a single count); *see also State v. Wilson*, 2024 WL 1684841, at *2,

____ N.W.3d ____, ____ (Iowa 2024) (examining defendant's argument that because the "unit of prosecution for indecent exposure is one count per exposure, not one count per viewer," "there was insufficient evidence to convict him of two counts of indecent exposure, and therefore, the resulting sentence is illegal"). Either way, the starting point is determining the legislature's intent for the unit of prosecution in Iowa Code section 724.26. *See Ross*, 845 N.W.2d at 702; *Copenhaver*, 844 N.W.2d at 447; *see also Wilson*, 2024 WL 1684841, at *2 ("To determine whether the evidence was sufficient to support the verdict, we must determine what act Iowa Code section 709.9 criminalizes.").

While the State frames Bokemeyer's argument as invoking merger under Iowa Code section 701.9, which "codified the double jeopardy protection against cumulative punishment," *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997), that statutory doctrine "is limited to double jeopardy claims involving lesser-included offenses." *Ross*, 845 N.W.2d at 701. The problem here is not lesser-included offenses, but whether Bokemeyer committed one or more than one criminal act. *See, e.g., State v. Love*, 858 N.W.2d 721, 725–26 (Iowa 2015) (Mansfield, J., concurring) (discussing multiplicity cases); *cf. State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995) (applying the legal elements test to determine whether possession of an offensive weapon under section 724.3 is a lesser-included offense of possession of an offensive weapon by a felon under section 724.26). "If the same statutory offense is charged twice, the operative 'question is whether the facts underlying each count were intended by [the legislature] to constitute separate units of prosecution.'" *United States v.*

*Platter*, 514 F.3d 782, 785 (8th Cir. 2008) (citation omitted); *accord Ross*, 845 N.W.2d at 702.

"Determining the unit of prosecution is another way of saying, what act did the general assembly criminalize?" *Ross*, 845 N.W.2d at 702. Turning then to the language of the statute, section 724.26 provides:

> 1. A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported *a firearm* or offensive weapon is guilty of a class "D" felony.
> 2. *a.* Except as provided in paragraph "b," a person who is subject to a protective order under 18 U.S.C. §922(g)(8) or who has been convicted of a misdemeanor crime of domestic violence under 18 U.S.C. §922(g)(9) and who knowingly possesses, ships, transports, or receives *a firearm*, offensive weapon, or ammunition is guilty of a class "D" felony.

(Emphasis added.)

The parties agree that the unit of prosecution under section 724.26 is "a firearm," meaning "the number of firearms controls." *See, e.g.*, *State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997) (finding the unit of prosecution under section 724.3, prohibiting the knowing "possession of an offensive weapon," is "possession of a single offensive weapon" (cleaned up)). From there, Bokemeyer contends that because he only possessed one firearm, the State "presented insufficient evidence to establish [he] was guilty of two violations" of section 724.26. The State, on the other hand, argues that even though "the unit of prosecution is the firearm," section 724.26 "contains two separate offenses in subsections one and two." In the State's view, although Bokemeyer "could not be convicted of multiple counts of violating Iowa Code section 724.26(1) for each felony on his record if he only

possessed one gun," "his possession of a single gun can be punished under both sections if he is prohibited under both" subsections. We think Bokemeyer has the better argument.

Federal courts have considered the same question under their analogous firearm-possession statute, 18 U.S.C. § 922(g)(1), and unanimously concluded "that Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification." *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (collecting cases); *accord United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) ("[T]his statute does not permit a court to, as the district court did here, 'impose multiple punishments on a defendant who commits one act of possession yet is both a felon and a domestic-violence misdemeanant.'" (citation omitted)). This makes sense because section 724.26 is not criminalizing a person's *status* as a felon or domestic-violence offender but that person's *act* of possessing a firearm while prohibited under those categories. *See State v. Buchanan*, 604 N.W.2d 667, 669 (Iowa 2000) (stating the purpose of section 724.26 is to prohibit potentially harmful persons from possessing firearms because the legislature considers them dangerous); *see also Patrick v. State*, 261 A.3d 1282, 1289 (Del. 2021) (concluding the legislative intent of its firearm-possession statute "is clear—the unit of prosecution is the act of possession of a deadly weapon by a person prohibited and not the way in which a defendant qualifies as a person prohibited"); *Melton v. State*, 842 A.2d 743, 756 (Md. 2004) ("[I]nterpreting the unit of prosecution as the prior conviction would be akin to stating that the societal evil to be remedied . . . is punishing persons with prior convictions based solely on their status, *i.e.*,

criminalizing their status, where the goal is actually to punish illegal *possessions* of firearms.").

We find the reasoning of these courts persuasive and accordingly reverse one of Bokemeyer's convictions under Iowa Code section 724.26. *See Ross*, 845 N.W.2d at 706; *Richardson*, 439 F.3d at 423.

## IV.  Conclusion

We reverse Bokemeyer's convictions for possession of psilocybin, three counts of failure to affix a drug tax stamp, and one count of possession of a firearm under Iowa Code section 724.26. This leaves him with convictions for possession of methamphetamine, manufacturing marijuana while in possession of a firearm, and one count of possession of a firearm under section 724.26. Because the district court imposed consecutive sentences on two of Bokemeyer's convictions— one of which we have reversed—we vacate the sentences on the remaining convictions and remand for resentencing. *See State v. Vandermark*, 965 N.W.2d 888, 895–96 (Iowa 2021); *see also Ross*, 845 N.W.2d at 706. As a result, we do not address Bokemeyer's claim that the district court considered an improper sentencing factor.

**CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**

Tabor, P.J., concurs; Buller, J., partially dissents.

**BULLER, Judge.** (concurring in part and dissenting in part).

I dissent from Division II.B but concur in the balance of the majority opinion. I would find the evidence established beyond a reasonable doubt that Bokemeyer possessed methamphetamine without affixing a proper tax stamp. And in my view, the majority errs at law and in its review of the record when it concludes otherwise. As to the marijuana plant, I agree the tax-stamp count is not supported by sufficient evidence and should be reversed. But in doing so, I cannot join the majority's analysis, which I believe improperly relies on dated unpublished decisions concerning inferential evidence—contrary to recent supreme court precedent.

**Methamphetamine.** Unlike the majority, I would find Bokemeyer's conviction for dealing methamphetamine without a proper tax stamp was supported by substantial evidence because jurors saw the methamphetamine in video recordings and a photograph. Although the video is more compelling than still photos, these screenshots offer a glimpse into the more-or-less 360-degree look jurors got at the methamphetamine as a sheriff's deputy rotated and displayed it on body-camera footage:







The State also admitted the photo exhibit reproduced below, which shows the bag of methamphetamine stationary on its side in the safe where it was found:



From the photo and video evidence, I believe the jury reasonably concluded the methamphetamine lacked a tax stamp. The majority emphasizes that there are smaller baggies contained inside the larger bag. But it's clear from the

evidence—or at least clear to me—that the larger bag is transparent, as light shines through the empty portions. If there were stamps on the smaller baggies, they would be visible in either the videos (where the deputy rotated the bag and all sides were shown) or in the still photo (which was taken with a flash). What the majority denigrates as "speculation" I consider taking the evidence at face-value—as required by law. Our standard of review is highly deferential to the jury's verdict and instructs us to view all evidence in the light most favorable to the State. *State v. Burns*, 988 N.W.2d 352, 370–71 (Iowa 2023). In my view, that standard compels affirming the tax-stamp count for methamphetamine.

The majority goes astray in finding the evidence insufficient, and its analysis is partially driven by reliance on what I believe to be erroneous and outdated unpublished precedent: *State v. White*, No. 01-1444, 2002 WL 31016642, at *2 (Iowa Ct. App. Sept. 11, 2002) and *State v. Avery*, No. 99-949, 2000 WL 1027287, at *3 (Iowa Ct. App. July 26, 2000). In my view, those cases are wrongly decided based on the evidence before those juries. In both, the drugs were admitted into evidence at trial and jurors could see for themselves whether tax stamps were affixed. I am not persuaded by our past unpublished analysis, which concluded the State was required to affirmatively disprove other potential inferences that could be drawn from the evidence, like the hypothetical possibility the drugs were at some point in a different container that had a tax stamp, *see White*, 2002 WL 13016642, at *2, or that jurors might not recognize a tax stamp if they were looking right at it, *see Avery*, 2000 WL 1027287, at *3. This argument might hold sway in a case where *something* was affixed to the drugs and jurors weren't sure if it was a tax stamp; but here, the jury could see from the body-camera footage and photos

that nothing whatsoever was attached, affixed, or stamped on the packaging or the drugs themselves when they were found. Further, our supreme court functionally overruled the reasoning of *White* and *Avery* two years ago in *State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021), when that court reiterated "the State was not required to refute every possible inference from the evidence." I am concerned the majority perpetuates the error rejected by *Ernst*. And I find it telling that, in twenty-two years, we are the first Iowa court to cite *White* or *Avery*. I dissent from both the legal analysis and the disposition regarding the methamphetamine tax stamp.

**Marijuana.** I come to a different conclusion on the marijuana plants and concur with the judgment of the majority. Contrasted with the evidence offering a good view of the methamphetamine and its packaging, the evidence on the marijuana plants is materially less. The best view of the plants captured on the bodycam footage lasts less than a second and the plants and containers are obscured by the grow tent. A photograph admitted into evidence is marginally better, but it still doesn't show a full view of the plants or containers. I do not believe a rational jury could find Bokemeyer guilty beyond a reasonable doubt for the marijuana-plant tax-stamp charge based on one less-than-a-second snippet of video or a partially obscured photo in which the container itself is out of focus. I do not reach this conclusion based on hypothetical inferences I might draw. Instead, I do not believe a rational jury would be "firmly convinced" solely based on this evidence. *See State v. Davis*, 975 N.W.2d 1, 14 (Iowa 2022) (approving of "firmly convinced" formulation for reasonable doubt). And the State offered no other proof on this point. As a result, I join the majority's judgment (but not its rationale) in reversing the marijuana-plant tax-stamp conviction.

Last, I would not want this dissent to be read as approving the approach taken by the county attorney at trial. As the majority notes, the drug-tax-stamp charge went unmentioned between reading the trial information and closing arguments. This appellate issue could've been avoided entirely by asking the deputies or another witness if there were tax stamps on the drugs.